### S07A1590. ADAMS v. THE STATE.
(658 SE2d 627)

HINES, Justice.

Quinton S. Adams ("Adams") appeals his convictions for the malice murder of Keith Williams, the aggravated assault of Chisfornd "Barazz" Norwood, and the possession of a firearm during the commission of a crime. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that, two days before Williams was killed, Adams, his brother Christopher Adams ("Christopher Adams"), and Danny Barker had an altercation with a group of men including Williams. During this fight, Adams was hit in the head with a bottle and believed that Williams hit him. Adams told Williams that he would pay for what he had done. Two nights later, Williams attended a birthday party; as he and Norwood left the party, they were accosted by a group of three men. Williams and Norwood ran and the men began shooting. Williams was fatally wounded, and Norwood escaped. Norwood identified Adams, Barker, and Christopher Adams as running from the scene of the shooting, and other witnesses saw Adams and the other two men fleeing the scene of the shooting.

1. The evidence was sufficient to enable a rational trier of fact to find Adams guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During jury voir dire, prospective juror Gordon testified that he was "close friends" with each of the three defendants. The State asked him whether he could "hear the evidence and base your verdict

---

[1] The crimes occurred on December 5, 2000. On March 20, 2001, a Grady County grand jury indicted Adams, Danny Barker, and Christopher Adams for malice murder, aggravated assault, and possession of a firearm during the commission of a crime. Adams and his co-indictees were tried together before a jury June 25-27, 2001, and Adams was found guilty of all charges. On June 27, 2001, the trial court sentenced Adams to a term of life in prison for malice murder, a term of 20 years in prison for aggravated assault, to be served concurrently with the life term, and a term of five years in prison for possession of a firearm during the commission of a crime, to be served consecutively to the life term. On June 28, 2001, Adams filed a motion for a new trial; he filed amendments to that motion on June 23, 2005, January 4, 2006, January 5, 2006, and January 23, 2006. The motion for new trial, as amended, was denied on April 13, 2007. Adams filed a notice of appeal on April 23, 2007, the appeal was docketed in this Court on July 3, 2007, and argued before the Court on October 10, 2007.

on that," or "since you are close friends . . . it would be hard for you to do that," to which Gordon responded: "I think it would give me a little trouble and I would rather not. I think it would." The State moved to exclude Gordon for cause, and Adams objected. Gordon then affirmatively responded to the query whether he "could listen to the evidence and the law the court gives and apply that law to the evidence and impassionately make the verdict." The trial court granted the State's motion, and excused Gordon for cause.

The trial court's determination as to whether to strike a juror for cause will not be set aside absent some manifest abuse of its discretion. *Shiver v. State*, 276 Ga. 624, 625 (2) (581 SE2d 254) (2003). "An appellate court must pay deference to the finding of the trial court and this deference includes the trial court's resolution of any equivocations or conflicts in the prospective juror's responses on voir dire. [Cit.]" *Nance v. State*, 280 Ga. 125, 128 (7) (623 SE2d 470) (2005). There was no manifest abuse of the trial court's discretion in striking prospective juror Gordon for cause.

3. Adams claims that trial counsel failed in several respects to provide effective representation. In order to prevail on this claim, Adams must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Adams contends that trial counsel should have moved to strike prospective juror Smiley for cause when she indicated she knew the victim and said: "I've known him, I know his parents and other family. . . . I have a great deal of compassion for the Williams family given the situation. I do have a great deal of compassion for the Williams family." The State asked if, considering that compassion, she could be a fair, impartial juror and render a verdict based on the

evidence and the law, without regard to her relationship to the victim's family: she responded that she could.

Adams does not show that had a motion to strike been made, it would have been granted; whether to strike a prospective juror for cause is in the trial court's discretion. *Shiver*, supra. Adams asserts that the trial court's willingness to strike prospective juror Gordon for cause, see Division 2, supra, shows that a motion would have been successful. However, the jurors' situations were not identical; while each revealed a relationship with certain of the parties interested in the outcome of the case so as to warrant further investigation, their responses to follow-up questions were different in an important aspect. When first asked if he could put aside his feelings of friendship and decide the case upon the proper basis, Gordon said he would have trouble doing so; when Smiley was first asked a similar question, she responded that she could properly render a verdict. Although Gordon later said that he could properly act as a juror, the fact remains that his responses on the subject presented a conflict for the trial court's resolution that Smiley's responses did not. Thus, it cannot be concluded that the trial court's ruling as to prospective juror Gordon would "control" a ruling as to prospective juror Smiley. Further, Smiley's responses did not indicate that she had formed "an opinion of [Adams's] guilt or innocence . . . so fixed and definite that [she would] be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [Cits.]" *Somchith v. State*, 272 Ga. 261, 262 (2) (527 SE2d 546) (2000). Accordingly, Adams fails to show that a motion to strike prospective juror Smiley for cause would have produced a different result in his trial.

(b) Evidence was presented that Adams's co-indictee Christopher Adams had offered witnesses money to change their testimony, and that co-indictee Barker had attempted to get a witness to lie on his behalf to create an alibi. Adams asserts that counsel was ineffective for failing to request a limiting instruction that the jury could consider this evidence only against Christopher Adams and Barker, and not against him. However, as the trial court noted in denying Adams's amended motion for new trial, any such attempts to influence witnesses were admissible against Adams as acts of his co-conspirators during the concealment phase of a conspiracy. See *Brooks v. State*, 281 Ga. 14, 15-18 (2) (635 SE2d 723) (2006); *Quaid v. State*, 132 Ga. App. 478, 488-489 (7) (208 SE2d 336) (1974). Accordingly, Adams fails to show that a request for a limiting instruction would have been granted, and thus fails to establish ineffective assistance of counsel on this basis.

(c) During the State's direct examination of a law enforcement officer who took a statement from Adams's girlfriend when a search

was being performed at Adams's home, the State asked: "[w]as she able to provide an alibi for Quinton Adams?," to which the officer replied: "[n]o, sir." Adams contends that trial counsel's failure to object to the State's question was deficient performance, as there had been no suggestion that he would offer alibi as a defense.[2] In ruling on Adams's amended motion for new trial, the trial court concluded that, as no evidence was presented that Adams's girlfriend was with him on the night of the shooting, any suggestion that she had not made such a statement did not harm Adams. We find no error in the trial court's conclusion, especially since even a sustained objection to the essentially irrelevant matter would not have resulted in a mistrial, or otherwise altered the result of the trial. See generally *James v. State*, 270 Ga. 675, 677 (4) (513 SE2d 207) (1999).[3]

(d) At the hearing on the amended motion for new trial, Adams presented evidence that four witnesses against him had been convicted of felonies and other crimes, and now contends that trial counsel was deficient in failing to attempt to impeach those witnesses with that evidence. Counsel testified that he did not remember being aware that the witnesses had such convictions, that the failure to attempt to impeach them with such convictions was not a decision of strategy, and that "perhaps" it should have been done. However, at the time of Adams's trial, the introduction of certified copies of the witnesses' impeaching convictions would have resulted in defense counsel losing the right to make the final closing argument, see former OCGA § 17-8-71, and it was a reasonable defense strategy to avoid introducing evidence to preserve that right. See *Nix v. State*, 280 Ga. 141, 143 (3) (b) (625 SE2d 746) (2006). And, not only did Adams's counsel do so, but counsel for the two co-defendants both waived the right to open closing argument and made only concluding argument.

Further, examination of the trial transcript supports the conclusion that Adams's counsel wished to retain that right. During cross-examination of one witness, counsel asked him to look at a certain page of a document to refresh his recollection, and the court stated: "[a]gain, we're getting perilously close, Mr. Murrah, to your tender of that by reference and exhibit to the jury." Counsel responded:

> Judge, I don't intend — the witness has refreshed his recollection from some documents that he took out of his pocket. What I would like for him to do is to identify the

---

[2] During the search, Adams told his girlfriend that she did not have to speak to the law enforcement officers and to "be a soldier."

[3] Additionally, the reference to "alibi" was not objectionable as a comment on Adams's failure to testify. See *Ponder v. State*, 268 Ga. 544, 546 (2) (491 SE2d 363) (1997).

documents that he looked at to refresh his recollection. That was testimony that I had nothing to do with the elicitation of and I simply want to know what he's looked at to refresh his recollection.[4]

And, at the hearing on the amended motion for new trial, Adams testified that trial counsel had told him if he did not present evidence at trial, "we will be able to get last argument." Accordingly, there was evidence supporting the trial court's implicit finding that counsel was, in fact, pursuing a reasonable strategy, and it was not error for the trial court to deny the amended motion for new trial on this ground.

(e) During closing argument, the prosecutor said: "I suggest to you that everything Derrick Peters told you was credible." Adams maintains that trial counsel should have objected to this argument. " 'It is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness; however, it is not improper for counsel to urge the jury to draw such a conclusion from the evidence. (Cit.)' [Cit.]" *Mason v. State*, 274 Ga. 79, 80 (2) (b) (548 SE2d 298) (2001). Similarly, Adams claims that the prosecutor improperly vouched for the veracity of witness Bryant when he said that she "told you the truth." Closing arguments are judged in the context in which they are made. See *Jones v. State*, 267 Ga. 592, 596 (3) (481 SE2d 821) (1997). And here, the State's assertion that Bryant's version of events was the true one was in the context of witness King's testimony that Christopher Adams was not involved in any fighting, although King had earlier told an investigating police officer that Christopher Adams was so involved, and King's further testimony that he had not changed his story; Bryant testified that after the shooting, Christopher Adams telephoned King in an effort to cause testimony to be altered, and that although she could not recall the dates of such telephone calls, it would be on her telephone bills. "The prosecutor's comments with which appellant takes issue are permissible since they are the conclusion the prosecutor wished the jury to draw from the evidence, and not a statement of the prosecutor's personal belief as to the veracity of a witness." *Mason*, supra. Accordingly, counsel's failure to object to these comments during argument was not deficient performance.

---

[4] Shortly before, counsel asked the witness if he had a list of questions that the prosecutor had given him, and the State objected that if counsel wished to question the witness about such a list, counsel should tender it into evidence; he did not do so.

(f) Finally, Adams asserts that trial counsel should have objected to what he characterizes as improper remarks by the State during closing argument. During closing, the prosecutor said:

> [s]everal times in the questioning of the witnesses, the Defendants' attorneys made note of the fact that I have prepared for each witness a list of questions. To the extent possible, I have done that ever since I have been prosecuting cases and that's been about fourteen years. In fact, when I was a defense attorney, I did for any witnesses then as well.
>
> I used to teach school, taught school for six years and gave tests. But it was not fair to give a person a test unless you had given them the material to read and know. So, yes, I do try to furnish them a copy of the statement they made to the police and a rough outline of the questions I'm going to ask them and if there are any particular precautions about something that's not admitted, don't mention this, because there are things that are inadmissible and we don't want to cause a mistrial. And I try to prepare my witnesses.
>
> As far as I am concerned, that is not cheating. That is trial preparation. . . .

Adams urges that this improperly put before the jury the statement that there was evidence in the case that was not revealed to the jury. But, the argument did not put forth any facts not in evidence, or inform the jury that facts existed in this case outside the record. Rather, the prosecutor was explaining to the jury his regular practice of witness preparation, was doing so after that practice had been made an issue at trial by defense counsel,[5] and thus, under the peculiar circumstances of this case, this argument fell within the wide latitude afforded counsel in closing arguments. See *Banks v. State*, 281 Ga. 678, 682-683 (4), (5) (642 SE2d 679) (2007). Accordingly, had counsel moved for a mistrial, there is no likelihood that one would have been granted, and the trial court did not err in denying the amended motion for new trial on this ground. See *Lloyd v. State*, 280 Ga. 187, 192 (2) (d) (ii) (625 SE2d 771) (2006).

*Judgments affirmed. All the Justices concur, except Hunstein, P. J., who concurs in the judgment only.*

---

[5] On several occasions during trial, counsel asked witnesses whether they had met with the prosecutor shortly before trial and discussed their testimony.

DECIDED MARCH 10, 2008.

*Brian Steel*, for appellant.

*Joseph K. Mulholland, District Attorney, Charles M. Stines, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.