**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**January 16, 2013**

# In the Court of Appeals of Georgia

A12A2388. COGHLAN v. THE STATE.

PHIPPS, Presiding Judge.

Donna J. Coghlan was charged with driving under the influence (DUI), driving on the wrong side of the road, and reckless driving. At trial, the court directed a verdict of acquittal on the charge of driving on the wrong side of the road, and the jury found Coghlan not guilty of reckless driving, but guilty of DUI. In this appeal from her DUI conviction, Coghlan challenges the sufficiency of the evidence, argues that the trial court erred by allowing certain remarks during the state's closing argument, and asserts that her sentence was the result of unconstitutional vindictiveness. We affirm.

1. Where, as here, the appellant challenges the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1]

The only witnesses who testified at the trial were two police officers called by the state. Their testimony showed the following. At about 2:00 a.m. on September 16, 2006, a uniformed patrol officer in a marked police cruiser observed a vehicle being driven on the wrong side of the road. The officer initiated a traffic stop of the vehicle, and approached the driver, Coghlan, who was alone in the vehicle. Upon asking Coghlan for her driver's license, the officer detected a "heavy odor of alcoholic beverage coming out of her person." The officer told Coghlan to shut off the engine and to remain seated in her vehicle while he stepped away. Coghlan turned off the engine, and the officer walked back to his patrol cruiser, then summoned an officer who specialized in DUI investigation. But about two minutes later, Coghlan started her vehicle engine and drove away. With the lights and siren on his police cruiser activated, the officer pursued Coghlan. Coghlan stopped a few blocks down the road, and the officer walked to Coghlan. Within moments, a law enforcement officer assigned to a DUI task force responded to the scene and took over the roadside investigation.

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

2

As the responding officer walked to the driver's side of Coghlan's vehicle, he began "smelling a strong odor of alcoholic beverage coming from the car and [Coghlan was] the only person in the car." The officer asked Coghlan to exit the vehicle. That officer recalled at trial, "It seemed like she stumbled out of the car and was very unsteady on her feet." Once Coghan was out of her vehicle, the officer noticed an odor of alcoholic beverage that was "[v]ery strong coming from her breath." The officer further described Coghlan's speech: "It was slow. It was slurred. There were times I didn't understand what she was saying. Not that I didn't understand because I didn't understand the words, it was just she would ramble on about different things that, you know, I wasn't asking." For example, the officer elaborated at trial, when he asked Coghlan whether she thought she should be driving, she answered something to the effect, "I don't know. . . , but I don't want to impair myself," which the officer discerned "makes no sense." As another example, the officer described that Coghlan wanted to know why the police were following her. According to the officer, "nobody was following her. She didn't quite understand that she was stopped for an infraction by another officer and because she left the [initial] scene, the officer had no choice but to go after her and stop her." The officer asked Coghlan whether she was willing to submit to field sobriety tests; she initially said

3

no, next asked the officer for advice, then wavered in her answer. The officer asked Coghlan why she had consumed alcoholic beverages and then driven a vehicle. She responded: "That's a good question."

Additionally, the officer recounted at trial that he had further observed Coghlan at the scene – her gait was unsteady, and her eyes were bloodshot and watery. Coghlan admitted to the officer having had "a little bit" to drink, later claiming to the officer that she had consumed two glasses of wine, both about eight or nine hours before she was stopped.

After testifying about his DUI training and his experience in patrolling a bar district where he routinely encountered intoxicated individuals, the officer testified that, based on his training and experience, along with his observations of Coghlan's speech, actions, and demeanor and his detection of the odor of alcoholic beverage on her breath, he had formed the opinion that Coghlan was under the influence of alcohol to the extent that she was a less safe driver.

The officer arrested Coghlan for DUI less safe, then read her the Georgia Implied Consent Notice.[2] Coghlan stated that she would submit to a state-administered chemical test of her breath. But, the officer testified, when he instructed

---

[2] See OCGA § 40-5-67.1.

4

Coghlan to blow into a particular part of the Intoxilyzer 5000 machine, "[Coghlan] wouldn't put any air into the instrument at all." Consequently, the testing instrument could not provide any proper reading, and the "results" of the breath test were deemed: "refused."[3] The state also presented at trial a redacted recording of Coghlan's encounter with the DUI task force officer who was summoned to the scene.

On appeal, Coghlan contends that the evidence was insufficient because the state adduced no evidence of field sobriety test results, nor any *actual* results of a test performed upon her blood, breath, or urine. There is no merit in her contention.

> Methods of proof to show impairment may include evidence of (i) erratic driving behavior, (ii) refusal to [submit to state-administered chemical testing], and (iii) the officer's own observations (such as smelling alcohol and observing strange behavior) and resulting opinion that the alcohol made it less safe for the defendant to drive. Here the State used all three methods.[4]

When the police officer initially stopped Coghlan, collected her license, and told her to turn off the vehicle engine and remain seated at the scene, Coghlan drove away – leaving behind both the officer and her driver's license. When she was

---

[3] Coghlan's lawyer acknowledged at trial that "[Coghlan] didn't take the test."

[4] *Duncan v. State*, 305 Ga. App. 268, 270 (1) (699 SE2d 341) (2010) (footnote omitted).

stopped by police soon thereafter and ordered to exit her vehicle, she stumbled out of it and thereafter was unsteady on her feet. Her eyes were bloodshot and watery. Her speech was slow and slurred. Her breath emitted a very strong odor of alcoholic beverage. She admitted having consumed alcoholic beverages earlier that evening. And instead of giving specific, coherent answers to several police questions, she "rambled on about different things." The officer who was assigned to a DUI task force formed the opinion that Coghlan was under the influence of alcohol to the extent that it was less safe for her to drive.[5] Moreover, the evidence authorized the jury to find that Coghlan had refused to submit to a chemical test of her bodily substance (breath).[6] Despite the lack of any evidence of field sobriety evaluations,[7] the state's evidence of Coghlan's conduct and manifestations, as observed and

---

[5] *Davis v. State*, 301 Ga. App. 484, 487 (1) (687 SE2d 854) (2009) ("A police officer may give opinion testimony as to the state of sobriety of a DUI suspect and whether he was under the influence to the extent it made him less safe to drive.") (punctuation omitted).

[6] See *State v. Collier*, 279 Ga. 316, 317 (612 SE2d 281) (2005) ("Under the implied consent law, the consequences of refusing the requested testing [include] the possibility of admission of such refusal at a criminal trial.") (citation omitted).

[7] The trial court granted Coghlan's motion in limine to exclude evidence of the sobriety evaluations.

recounted by the two law enforcement officers who encountered her at the time in question, suffices to sustain her DUI conviction.[8]

2. Coghlan contends that the trial court erred by permitting the prosecutor to make certain remarks, citing three portions of the state's closing argument.

(a) In one portion, Coghlan asserts, the state impermissibly disparaged defense counsel by stating that her attorney – who moments prior had delivered closing

---

[8] See OCGA § 40-6-391 (a) (1) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder the influence of alcohol to the extent that it is less safe for the person to drive[.]"); *Korponai v. State*, 314 Ga. App. 710, 710-711 (1) (725 SE2d 832) (2012) (concluding evidence was sufficient to sustain DUI less safe conviction, despite lack of evidence of field sobriety tests, where defendant was at an accident scene, smelled strongly of alcohol, had slurred speech, was staggering, and refused an alco-sensor breath test and an Intoxilyzer breath test, and where state introduced defendant's prior DUI conviction); *Morgan v. State*, 181 Ga. App. 150, 151 (351 SE2d 497) (1986) (determining that the evidence of DUI less safe conviction was "overwhelming[ly]" sufficient, despite lack of evidence of field sobriety tests, where officers observed defendant drive into a ditch while attempting to enter a driveway, defendant fell into the ditch while exiting the car, defendant had a strong odor of alcohol on him and he could not stand alone, his eyes were bloodshot, and his speech was so slurred he could hardly be understood when he spoke). Cf. *Hughes v. State*, 290 Ga. App. 475, 477 (1) (b) (659 SE2d 844) (2008) (concluding that evidence was insufficient to sustain DUI of drugs to the extent defendant was less safe to drive; although officer testified he smelled marijuana in defendant's truck, defendant was not alone in truck, passenger fled area before police arrived, officer offered no testimony that defendant smelled of marijuana or exhibited physical signs of intoxication, officer did not conduct any field sobriety tests or chemical testing to determine whether defendant was intoxicated, and there was no evidence that defendant had ingested or was under the influence of marijuana when truck struck child on residential street).

7

argument on her behalf – had employed a "smoke and mirrors" strategy. "Closing arguments are judged in the context in which they are made."[9]

The transcript shows that, at the beginning of the state's closing argument, the prosecutor revealed that, earlier in his legal career, he had "[done] some criminal defense work. And by doing that work I found myself sometimes not addressing certain issues." There were occasions, the prosecutor continued, when there was "a little smoke in the room; the more smoke that came in the room, the better for me. But what I want to do today is I want to just be this big ceiling fan and just suck out some of the smoke that's in this room today." The prosecutor next reminded the jurors of the testimony given by the officer who stopped Coghlan:

> [That officer] said the reason he stopped her was because she was driving on the wrong side of the street and he asked for a license and insurance and went back to his car, you know, told her to wait, told the Defendant to wait, and went back to his car to verify the information. Now, this is the part where as a defense attorney, that's a very important part that I often overlooked. You see, [the defense attorney] in his closing, he did not mention the Defendant driving off while [that officer] had her license and her insurance. He told her not to go anywhere. He didn't mention that [the officer] had put on his lights as well as his siren to pull the Defendant over. That's sort of the smoke and mirror stand.

---

[9] *Adams v. State*, 283 Ga. 298, 302 (2) (e) (658 SE2d 627) (2008) (citation omitted).

Not only did [the officer] pull the Defendant over for driving on the wrong side of the road –

Defense counsel interposed,

Your Honor, I'm going to object to that because, again, she's not charged with leaving the scene or eluding, that was misstating the evidence. That's not what she's charged with. The smoking mirror is an improper inference because it castigates bad intent on the defense for no reason in this case. That's part of the evidence that he can't use that type of analogy and make a personal attack on defense counsel.

The trial court ruled, "I don't think his comments – I think they purport with the evidence, even though it may or may not have been charged. I think it's permissible for him to draw attention to it."

On appeal, Coghlan maintains that the prosecutor's comments were not related to any evidence or lack of evidence, but were instead impermissible comments by the prosecutor against defense attorneys in general, as well as her trial attorney, specifically.

Without question, "counsel should adhere to the highest standards of professionalism and proper courtroom decorum,"[10] and "we do not condone any

---

[10] *Gissendaner v. State*, 272 Ga. 704, 713 (10) (a) (532 SE2d 677) (2000) (citations omitted).

9

argument that unnecessarily impugns the integrity of opposing counsel, even if obliquely."[11] However, "[i]t is well settled that counsel is permitted wide latitude in closing argument, and any limitation of argument is a matter for the court's discretion."[12] Here, the state presented evidence that Coghlan fled a traffic stop, leaving behind her driving license, and the trial court correctly reasoned that said evidence was admissible in proving a DUI charge.[13] The transcript shows that the prosecutor used the complained-of metaphor to argue that the defendant had not rebutted or explained the state's evidence.[14] Having considered the "smoke and

---

[11] *Warren v. State*, 314 Ga. App. 477, 481 (2) (d) (724 SE2d 404) (2012), citing *Gissendaner*, supra.

[12] *Davis v. State*, 290 Ga. 757, 759 (3) (725 SE2d 280) (2012) (citation and punctuation omitted).

[13] See *Duncan*, supra ("In determining whether a driver is impaired by alcohol or other substances, the manner of his driving may be considered as a factor if there is evidence that he has consumed alcohol or drugs."); *Walczak v. State*, 259 Ga. App. 140, 143 (2) (575 SE2d 906) (2003) ("Evidence as to the manner of driving may be taken into account where there is evidence that the defendant is DUI for the purpose of determining whether or not his manner of driving shows him to have been affected by the intoxicant to the extent that he drives less safely and carefully than he might otherwise have done.") (punctuation omitted).

[14] See *Arrington v. State*, 286 Ga. 335, 346 (16) (c) (687 SE2d 438) (2009) ("A prosecutor may argue that the defendant has not rebutted or explained the State's evidence.") (citations omitted); *Pye v. State*, 269 Ga. 779, 788 (19) (505 SE2d 4) (1998) ("The State is allowed considerable latitude in imagery and illustration in making its argument.") (citation omitted).

mirrors" characterization of the defense employed, within the context in which it was used, we are constrained to find no reversible error.[15]

(b) With respect to the two remaining portions of the closing argument of which Coghlan complains, Coghlan failed to lodge any objections thereto, and consequently, failed to preserve those issues for purposes of appeal.[16] And even had

---

[15] See *Banks v. State*, 281 Ga. 678, 682-683 (5) (642 SE2d 679) (2007) (noting that counsel is permitted wide latitude in closing argument and thus finding no reversible error, where prosecutor characterized defense theory as commonly used and known as "the whore defense," which was "designed to play on prejudices" that the jurors may have, where defense objected on the ground that such argument attacked him "personally" and accused him of trickery, and where the court responded that there would be no inferences or aspersions cast on defense counsel); *Gissendaner*, supra at 712-713 (10) (a) (citing principle that the permissible range of argument during final summation is "very wide" and thus finding that no reversible error occurred, where prosecutor stated early in his argument that "[w]hat you just heard from defense counsel has done a tremendous violence to the truth in this case," then suggested that defense counsel's argument had failed to comport with the evidence, and further referred to defense counsel's argument as "an insult to the truth"); see generally *Adams*, supra at 303 (3) (f) (finding that the prosecutor's argument fell within the wide latitude afforded, where cited portion "did not put forth any facts not in evidence, or inform the jury that facts existed in [the] case outside the record," rather, the prosecutor "was explaining to the jury his regular practice").

[16] *Johnson v. State*, 288 Ga. 803, 808 (5) (708 SE2d 331) (2011) (holding that failure to object to comments made during closing argument waived issue, and further declining to review issue under "plain error" analysis); *Moore v. State*, 288 Ga. 187, 191 (3) (702 SE2d 176) (2010) (concluding that whether the state made improper comments during closing argument was not preserved for appeal, where the defendant failed to object to the prosecutor's closing argument at the time).

11

Coghlan objected thereto, no reprieve would have been due her as the cited remarks did not exceed the wide latitude afforded counsel during closing argument.

(i) Coghlan complains that the prosecutor said the following:

The Defendant made a choice and that choice was to get behind the wheel . . . putting not only her life in danger, but the life of any other citizen who was on the roads traveling or walking in danger also. And I ask that you deliver a guilty of – a verdict of guilty sending the message of relating to take responsibility just like thousands of other people have taken the responsibility for the charge. I ask that you find her guilty of DUI less safe, and by way of reckless driving, driving under the influence, wrong side of the road September 16, 2006. Thank you.

According to Coghlan, these remarks violated the prohibition against making golden rule arguments, because they implied that the jurors (as "citizen[s]") were potential victims in this case.

Though it is improper for the state to make a golden rule argument, one that asks the jurors to place themselves in a victim's position,[17]

it is not improper for the state to appeal to the jury to convict for the safety of the community or to curb an epidemic of violence in the community. Nor is it improper for the prosecutor to emphasize to the

---

[17] *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002).

12

jury its responsibility to enforce the law. The state's argument in this case was not improper.[18]

(ii) Coghlan asserts that the prosecutor improperly injected his personal opinion into the state's closing argument when he made the statement: "I think [the officer who stopped Coghlan] did the responsible thing by calling [a DUI task force officer] out to the scene to do a further investigation." Coghlan relies on the principle that it is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness.[19] Coghlan's assertion and reliance upon said principle are unavailing.

---

[18] *Clark v. State*, 285 Ga. App. 182, 184 (2) (645 SE2d 671) (2007) (footnotes omitted); see *Gibson v. State*, 283 Ga. 377, 381 (8) (659 SE2d 372) (2008) (finding it appropriate for prosecutors to urge the jury to speak on behalf of the community and rid it of robbers and murderers); *Laney v. State*, 271 Ga. 194, 198 (10) (515 SE2d 610 (1999) (finding statement "this is your community" acceptable); *McClain v. State*, 267 Ga. 378, 385 (4) (477 SE2d 814) (1996) ("A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished."); *Philmore v. State*, 263 Ga. 67, 69 (3) (428 SE2d 329) (1993) (holding that it is not improper for a prosecutor to appeal to the jury to convict for the safety of the community or to convict so as to send a message to others that criminal activities will not go unpunished; the state may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard).

[19] *Adams*, supra at 302 (3) (e).

13

Despite the prosecutor's phraseology, the statement is most reasonably seen as an attempt to draw an inference from the evidence.[20] "Inferences drawn from facts adduced at trial are acceptable argument, and the fact that the inferences may have been improperly couched in the framework of a personal opinion does not render them reversible error."[21] The transcript shows that the statement flagged by Coghlan was made after the prosecutor had recited the circumstances faced by the patrol officer who called for an officer specially trained in DUI investigation, and after the prosecutor had next contrasted the work experiences of the patrol officer and the DUI task force officer. Additional review of the transcript supports the conclusion that the flagged statement was responsive to the defense claim that the state's case hinged on mere opinion evidence that failed to meet the reasonable doubt burden of proof.[22]

---

[20] See *McClain*, supra at 384 (3) (b) (2) (concluding that, despite phraseology, prosecutor's comments – "[I]f that's not malice murder I don't know what is. The evidence of malice is as tight as a tick on a dog." – can most reasonably be seen as an attempt to draw inferences from evidence); *Carr v. State*, 267 Ga. 547, 556 (7) (b) (480 SE2d 583) (1997) (determining that, although prosecutor prefaced portions of his argument with phrases such as "I have no doubt," "I think," and "I don't believe," when considered in context, the most reasonable interpretation of those comments was that the prosecutor was asking the jurors to draw inferences from the evidence).

[21] *Carr*, supra (citation omitted).

[22] See *McClain*, supra (noting that the comment flagged by the appellant "was made after the prosecutor outlined the evidence showing [appellant's] intent, and the remarks were clearly responsive to [appellant's] argument that the state failed to

14

Given the foregoing, the prosecutor's statement with which Coghlan takes issue did not exceed the wide latitude afforded to counsel since it was fairly "the conclusion the prosecutor wished the jury to draw from the evidence, and not a statement of the prosecutor's personal belief as to the veracity of a witness."[23]

3. Citing language of the Sixth Amendment,[24] as well as of the Georgia Constitution,[25] Coghlan charges the trial court with impermissibly punishing her by imposing an enhanced sentence. According to Coghlan, "[t]he trial court clearly punished [her] for having gone to trial. The trial court virtually admitted enhancing the sentence for that reason during sentencing."

_____

prove malice").

[23] *Adams*, supra (finding that the prosecutor's statements – "I suggest to you that everything Derrick Peters told you was credible" and that another witness "told you the truth" – were permissible as conclusions the prosecutor wished the jury to draw from evidence); see *Carr*, supra; *McClain*, supra.

[24] Specifically, Coghlan cites language of the Sixth Amendment that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district where the crime shall have been committed . . . ."

[25] Specifically, Coghlan cites language of Article 1, Section 1, Paragraph 11 that "[i]n all criminal cases, the defendant shall have a public and speedy trial by an impartial jury; and the jury shall be the judges of the law and the facts."

15

Notably, in contradiction of Court of Appeals Rule 25,[26] Coghlan has provided not a single citation to the record in support of her charge.[27] "Our requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court."[28] While "[i]t is not this Court's role to cull the record on a party's behalf,"[29] "we will exercise our discretion and resolve this [issue] on its merits."[30]

The applicable sentencing provision, OCGA § 40-6-391 (c) (1) (B), states in pertinent part: "Every person convicted of violating this Code section shall, upon a first . . . conviction . . . be punished as follows: A period of imprisonment of not fewer than ten days nor more than 12 months, which period of imprisonment may, at the sole discretion of the judge, be suspended, stayed, or probated. . . ."

---

[26] See Court of Appeals Rule 25 (c) (providing that "[e]ach enumerated error shall be supported in the brief by specific reference to the record or transcript").

[27] See generally *Prine v. State*, 237 Ga. App. 679, 680 (1) n. 1 (515 SE2d 425) (1999) (reiterating that the burden is on the appellant to show error by the record).

[28] *Aldalassi v. Drummond*, 223 Ga. App. 192 (1) (477 SE2d 372) (1996) (citation omitted).

[29] *Walker v. State*, 280 Ga. App. 393, 395 (2), n. 5 (634 SE2d 177) (2006) (citation and punctuation omitted).

[30] *Chastain v. State*, 237 Ga. App. 640 (516 SE2d 362) (1999).

Although, before trial, the state apparently offered Coghlan a plea deal that provided for a 12-month sentence, with credit for time served and the balance probated, Coghlan rejected it. At the sentencing hearing, the state asked the trial court to impose upon her a 12-month sentence with 45 days to serve.

Coghlan's attorney asserted that Coghlan had "no prior history"; further, he told the court that, after Coghlan discussed the underlying facts with him, he had suggested that she take certain steps "to make sure she didn't have a problem." The attorney stated that Coghlan had thereafter, for example, volunteered 100 hours of community service, attended a two-hour "MADD Victim Impact Panel," and "[gone] in for alcohol screening all the way back in January of '07 and followed the recommendation, which was to complete Risk Reduction." Thus, Coghlan's lawyer proposed, "I would ask the Court not to punish her. She spent a night in jail the night of this arrest and she has complied with everything I've asked her to do, evaluation, community service, everything."

The final disposition order in this case shows that Coghlan was sentenced to twelve months, probated after service of two days, with credit for time served of one day. The record, including the transcript of the sentencing hearing, convinces us that the trial court permissibly exercised its discretion in sentencing Coghlan based on the

evidence adduced against her. We discern no merit in Coghlan's vague charge that

the sentence imposed upon her was the result of unconstitutional vindictiveness.[31]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[31] See *Richardson v. State*, 305 Ga. App. 363, 368 (5) (699 SE2d 595) (2010) (recognizing that "a trial court does not engage in unconstitutional vindictiveness by imposing a harsher sentence following a jury trial than may have been imposed if the defendant had accepted a plea bargain," and noting that "entry of a guilty plea may constitute a sentencing consideration warranting leniency") (citations and punctuation omitted).