**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 9, 2013**

# In the Court of Appeals of Georgia

A13A1424. PITTS v. THE STATE.

BARNES, Presiding Judge.

A jury found Duranty Beuford Pitts guilty of two counts of armed robbery and one count of aggravated assault, and the trial court denied his motion for new trial. On appeal, Pitts contends that the trial court erred in denying his motion to exclude his in-court identification by two of the victims and in denying his motion to admit a statement of a third victim under the necessity exception to hearsay. Pitts further contends that his trial counsel rendered ineffective assistance by failing to object to certain remarks made by the prosecutor during closing argument. For the reasons discussed below, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence

showed that on September 8, 2010, three landscape workers were taking their lunch break on the grounds of the Pine Village North Apartments in Cobb County. Two young men, Andrew Hibbler and Torrance Wright, walked by the workers. Hibbler commented to Wright that they should rob them. To determine if the workers had any money, Hibbler approached them and asked for change for a twenty dollar bill. When the workers indicated that they had no money, Hibbler and Wright walked away.

Hibbler and Wright returned to the neighboring apartment complex, the Regency Square Apartments, where they lived. Although the landscape workers had told Hibbler that they had no money, Hibbler did not abandon his idea of robbing them. Instead, he spoke with Pitts, who also lived at Regency Square Apartments, before meeting back up with Wright. The three men then walked back to the Pine Village North Apartments where the landscape workers were having their lunch break. Pitts was carrying a semiautomatic handgun.

The landscape workers saw the three men approaching and that one of them was carrying a weapon. They ran and got inside their truck in an effort to escape. Pursuing the workers, Pitts ran to the driver's side of the truck and Hibbler ran to the passenger's side while Wright stood a short distance away as the lookout. Pitts pulled the driver out of the truck and threw him to the ground. Pitts pointed the handgun at

2

the driver and demanded money. After the driver gave Pitts four dollars out of his wallet, Pitts turned his gun toward the other two workers and demanded money from them. One of them surrendered twenty dollars, but the other one refused to hand over any money. Pitts, Hibbler, and Wright then ran back to the Regency Square Apartments. Once in the apartment complex, Wright ran to his apartment, where Hibbler soon joined him, and Pitts ran off by himself.

Immediately after the robbery, one of the landscape workers, the driver, got back inside the truck and followed the robbers into the Regency Square Apartments. Another worker called 911 and informed the police where the robbers had fled. The police arrived shortly thereafter and successfully apprehended Wright and Hibbler in the former's apartment. Later that afternoon, Wright gave a statement to a detective in which he named Pitts as the third robber. Wright also told the detective where Pitts lived in the apartment complex. The detective arrested Pitts at his apartment the following day.

Hibbler, Wright, and Pitts were jointly indicted on two counts of armed robbery and one count of aggravated assault. Hibbler and Wright pled guilty to lesser offenses and testified on behalf of the State at Pitt's trial, and both identified Pitts as the gunman in the robbery. Although one of the landscape workers moved to Mexico

after the robbery and thus was unavailable to testify, the remaining two workers testified regarding the robbery. One of the workers, the driver of the truck, was able to positively identify Pitts in the courtroom as one of the robbers, but the other worker testified that he did not "remember that well" the faces of the robbers. After hearing from these and other witnesses presented by the State,[1] the jury found Pitts guilty of the charged offenses. Pitts filed a motion for new trial, which the trial court denied, resulting in this appeal.

1. Pitts contends that the trial court erred in denying his motion in limine seeking to exclude his in-court identification by the two landscape workers. According to Pitts, his motion should have been granted because the police did not have the two workers participate in a pre-trial identification procedure. Pitts further argues that his motion should have been granted because the courtroom environment for the in-court identifications was too suggestive in that the workers believed that the gunman was African-American, and Pitts was the only African-American man sitting in the courtroom.

As an initial matter, it bears repeating that only one of the landscape workers positively identified Pitts in the courtroom as the gunman in the robbery. Hence, any

---

[1] Pitts did not testify or present any defense witnesses.

error by the trial court in denying Pitts's motion in limine to exclude the in-court identification by the worker who ultimately was unable to identify him as one of the robbers clearly would be harmless. See *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 286 (1), n. 2 (260 SE2d 20) (1979) ("Obviously, if the evidence is never offered at trial, the denial of the motion in limine is harmless.").

With respect to the landscape worker who positively identified Pitts in the courtroom, the trial court did not err in denying Pitts's motion to exclude. The Supreme Court of Georgia has held that "[a] line-up identification, or identification from a group of photographs, is not a prerequisite to every in-court identification," *Ralston v. State*, 251 Ga. 682, 684 (2) (309 SE2d 135) (1983), and this Court has specifically held that "the fact that the victim did not participate in a pre-trial identification [does not] render her in-court identification inadmissible." *Blige v. State*, 205 Ga. App. 133, 135 (4) (421 SE2d 547) (1992). See *Price v. State*, 159 Ga. App. 662, 663 (1) (284 SE2d 676) (1981). It follows that the fact that the landscape worker did not participate in a pre-trial identification procedure before making his in-court identification of Pitts did not render the latter identification inadmissible.

We also must reject Pitts's argument that his motion to exclude should have been granted because he was the only African-American man sitting in the courtroom

5

when the identification was made. The Supreme Court of Georgia and this Court have previously rejected this argument, and we are bound by that precedent. See *Ralston*, 251 Ga. at 684 (2); *Williams v. State*, 174 Ga. App. 56 (1) (329 SE2d 226) (1985); *Mangrum v. State*, 155 Ga. App. 334 (1) (270 SE2d 874) (1980). An in-court identification "is subject to the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial," *Ralston*, 251 Ga. at 683-684 (2), and the problematic aspects of an in-court identification go to the identifying witness's credibility, which "is solely a question for jury determination." *Price*, 159 Ga. App. at 664 (1). Here, defense counsel cross-examined the landscape worker about the fact that Pitts was the only African-American man sitting in the courtroom, and thus counsel had an opportunity to test the credibility of the worker and call into question his in-court identification. Additionally, defense counsel raised the issue of the suggestiveness of the in-court identification during his closing argument, thereby calling the jury's attention to the matter. The trial court, therefore, committed no error in denying Pitts's motion to exclude the in-court identification of the landscape worker.[2]

---

[2] We note that there may be procedures that a trial court in its discretion could follow in an effort to mitigate any potential problems of suggestiveness arising from an in-court identification where the defendant is the sole member of a particular race

6

2. Pitts also contends that the trial court erred in denying his motion to admit an out-of-court statement made by the landscape worker who was unavailable to testify at trial under the necessity exception to hearsay. The record reflects, however, that the trial court granted Pitts's motion to admit the out-of-court statement, which was later introduced at trial. Accordingly, Pitts's contention is without merit.

3. Lastly, Pitts contends that his trial counsel rendered ineffective assistance by failing to object to certain allegedly disparaging remarks made by the prosecutor during closing argument. To prevail on a claim of ineffective assistance under the two-pronged test set forth in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), "[Pitts] must show that counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Anthony v. State*, 317 Ga. App. 807, 813 (4) (732 SE2d 845) (2012).

The context of the prosecutor's remarks involved the following evidence. At trial, evidence was introduced that the police, while executing a search warrant, found

---

sitting in the courtroom. See *Partridge v. State*, 218 Ga. App. 580, 581 (462 SE2d 415) (1995) (Beasley, concurring specially).

a BB gun in the trunk of co-defendant Hibbler's car. A detective testified that the material on the BB gun would not hold fingerprints and therefore that he did not attempt to lift fingerprints from the BB gun. During closing argument, defense counsel argued that the lack of fingerprint analysis was a "failure of evidence" and suggested that it called into question whether Pitts was the gunman involved in the robbery. In the rebuttal portion of his closing argument, the prosecutor responded that fingerprint analysis on the BB gun would have simply shown that Hibbler owned the BB gun, as the jury already knew, and "wouldn't prove anything" because there was witness testimony that the BB gun was not the same gun used by Pitts in the robbery. As such, the prosecutor argued that defense counsel's argument regarding the lack of fingerprint evidence was a "red herring" and was an example of "blowing some smoke up" to get the jury "off the trail."

Pitts maintains that his trial counsel should have objected when the prosecutor responded to the defense's fingerprint argument by referring to it as a "red herring" and as an example of "blowing some smoke up" to get the jury "off the trail." According to Pitts, the prosecutor's remarks during closing argument were disparaging toward his trial counsel, who was ineffective for failing to object and

8

have the trial court strike the remarks and admonish the prosecutor in front of the jury. We are unpersuaded.

"Closing arguments are judged in the context in which they are made." *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008). Furthermore,

> [c]ounsel enjoys very wide latitude in closing arguments, and may make use of illustrations, so long as he does not make extrinsic or prejudicial statements that have no basis in the evidence. Counsel's illustrations during closing argument may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination.

(Punctuation and footnote omitted.) *Rainly v. State*, 307 Ga. App. 467, 478 (8) (705 SE2d 246) (2010). In light of these general principles, "[t]he State is allowed considerable latitude in imagery and illustration in making its argument," *Pye v. State*, 269 Ga. 779, 788 (19) (505 SE2d 4) (1998), and "any limitation of argument is a matter for the [trial] court's discretion." (Punctuation and footnote omitted.) *Coghlan v. State*, 319 Ga. App. 551, 556 (2) (a) (737 SE2d 332) (2013).

When viewed in the context in which they were made, the prosecutor's remarks were simply part of an effort to show that the defense had not rebutted or explained away the State's evidence and did not exceed the wide latitude permitted in closing

9

argument.[3] See, e.g., *Coghlan*, 319 Ga. App. at 555-556 (2) (a) (trial court did not err by permitting prosecutor to argue during closing argument that defense counsel was following a "smoke and mirrors" strategy); *Rainly*, 307 Ga. App. at 478 (8) (trial court did not err in permitting prosecutor to argue during closing argument that defense counsel was engaging in "magic" and "misdirection" and that jury should instead "focus on . . . the evidence and on the truth"). See generally *Arrington v. State*, 286 Ga. 335, 346 (16) (c) (687 SE2d 438) (2009) ("A prosecutor may argue that the defendant has not rebutted or explained the State's evidence."). The trial court, therefore, did not abuse its discretion in permitting the prosecutor's remarks, and an objection by trial counsel would have been unsuccessful. Consequently, trial counsel's failure to object did not constitute deficient performance. See *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005) ("Failure to make a meritless

---

[3] We note that Georgia courts have used the term "red herring" to describe an argument raised in a case. See, e. g., *Smith v. State*, 284 Ga. 304, 308 (3) (c) (667 SE2d 65) (2008) ("Smith's suggestion that his Sixth Amendment right 'to be confronted with the witnesses against him' was violated is a red herring."); *Walker v. State*, 262 Ga. App. 872, 877 (1) (b) (586 SE2d 757) (2003) ("Indeed, the 'accuracy' of the air flow sensor appears a red herring in this case, since Walker's breath sample was significantly insufficient for BAC evaluation even taking into account the sensor's small, 0.1 liter margin of error.").

objection cannot be evidence of ineffective assistance.") (citations and punctuation omitted).

Additionally, even if the prosecutor's remarks had been improper, Pitts cannot show that his trial counsel was deficient for failing to object. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Flemister v. State*, 317 Ga. App. 749, 757 (4) (b) (732 SE2d 810) (2012). At the hearing on the motion for new trial, Pitts's trial counsel testified that one of the reasons he did not object to the prosecutor's remarks is that he wanted to avoid drawing the jury's attention to them. Counsel's strategic decision to forego making the objection was reasonable and did not constitute deficient performance. See *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002) (concluding that defense counsel's decision "to remain silent instead of objecting and calling attention to the improper argument" constituted reasonable trial strategy); *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001) ("In this case, an objection may simply have highlighted the point being made by the prosecution, so we cannot say this was not a valid exercise of professional judgment.") (citation and punctuation omitted).

Because Pitts failed to establish that his trial counsel was deficient, he could not prove his claim of ineffective assistance of counsel. See *Anthony*, 317 Ga. App. at 813 (4) (noting that "[w]e need not address both the deficient performance and prejudice prongs of the test if [the defendant] has made an insufficient showing on either prong.") (citation omitted). The trial court thus did not err in denying Pitts's motion for new trial.

*Judgment affirmed. Miller and Ray, JJ., concur.*