**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 13, 2021**

# In the Court of Appeals of Georgia

A20A0214. JEFFERSON v. THE STATE.

PHIPPS, Senior Appellate Judge.

A Fayette County jury found Ted Andrew Jefferson guilty of two counts of armed robbery, kidnapping with bodily injury, two counts of aggravated assault, burglary, and possession of a firearm during a felony. Following the trial court's partial denial of his motion for new trial, Jefferson appeals, contending that the evidence was insufficient to sustain his conviction for kidnapping with bodily injury, the trial court erred by allowing the victim to identify Jefferson in court, and his counsel was ineffective. Finding no error, we affirm.

Viewed in the light most favorable to the verdicts, *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence at trial showed that the victim was at her home when two men, later identified as Jefferson and his

cousin Gilbert Jefferson ("Gilbert"), entered her residence. Both men were wearing masks, and one held a shotgun. Jefferson had been told by Christopher Falkner that the tenant who lived in the victim's basement apartment had received an inheritance which was kept in the victim's safe. Jefferson and his cousin planned to steal the inheritance money. Jefferson attacked the victim, and she fought back. Jefferson told the victim he wanted the money from the inheritance. During the beating, the victim screamed loudly to alert her friend who was in the next room. The victim's friend entered the living room and was immediately ordered to the ground by Gilbert, who held the shotgun. At that point, Jefferson grabbed the victim and "pushed [her], shoved [her], drug [her] into that second room and he said, 'I'm gonna tie you up.'" Jefferson threw the victim into a chair and returned to the living room to retrieve a blanket. The victim testified that she believed Jefferson planned to cover her head with the blanket, tie it with extension cords he had pulled from the walls, and execute her. As soon as Jefferson turned away from her, the victim ran out to her deck. After she had taken six or seven steps, she was shot in the head. The shotgun blast knocked the victim to her knees, but she got up and continued running. She hid in the woods behind her house until she "heard a large truck start up and take off." The victim then fled to her neighbors' house, and the neighbors called 911.

Jefferson was indicted, along with his co-defendants Gilbert and Falkner, for two counts of armed robbery, kidnapping with bodily injury, two counts of aggravated assault, burglary, and possession of a firearm during the commission of a crime. Gilbert and Falkner entered negotiated plea agreements and testified for the State at trial. At the conclusion of the trial, the jury found Jefferson guilty on all counts. This appeal follows the trial court's partial denial of Jefferson's motion for new trial.[1]

1. Jefferson contends that the evidence was insufficient to support his conviction for kidnapping with bodily injury, arguing that the State failed to prove the required element of asportation. We disagree.

When an appellant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U. S. at 319 (III) (B) (emphasis in original). On appeal, the appellant is no longer presumed innocent. *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014).

---

[1] The trial court granted Jefferson's motion for new trial in part, finding that the evidence was insufficient to support his convictions for armed robbery.

3

> A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will. OCGA § 16-5-40 (a). Regarding the asportation element,[2] slight movement shall be sufficient; provided, however that any such slight movement of another person which *occurs while in the commission of any other offense* shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense. OCGA § 16-5-40 (b) (1). But movement shall not be considered merely incidental to another offense if it: (A) conceals or isolates the victim; (B) makes the commission of the other offense substantially easier; (C) lessens the risk of detection; or (D) is for the purpose of avoiding apprehension. OCGA § 16-5-40 (b) (2) (A)-(D).

*Rich v. State*, 307 Ga. 757, 760 (1) (b) (838 SE2d 255) (2020) (punctuation omitted; emphasis supplied). According to Jefferson, the State did not prove asportation because the kidnapping occurred during the commission of a burglary, and the victim's movement from one room to the next was incidental to the burglary. This argument is unavailing.

"To complete the crime of burglary, it is not necessary that a defendant actually commit a completed theft; it is sufficient if he enters without authority and with the

---

[2] "The element of 'abducting or stealing away' . . . [is] known as asportation." *Whatley v. State*, 335 Ga. App. 749, 753 (2) (782 SE2d 831) (2016).

intent to commit a theft or felony." *Adams v. State*, 284 Ga. App. 534, 535 (1) (644 SE2d 426) (2007) (citation and punctuation omitted). Here, the burglary count in the indictment alleged that Jefferson "unlawfully, without authority, and with the intent to commit a theft and felony . . . therein, enter[ed] the dwelling house of [the victim.]" The State adduced evidence that Jefferson entered the victim's house without authority and with the intent to commit a theft. Thus, the crime of burglary, as alleged in the indictment, was complete as soon as Jefferson entered the victim's house and before he forced the victim from the living room into another room. See *White v. State*, 332 Ga. App. 495, 499 (2) (c) (773 SE2d 448) (2015). Consequently, the jury was authorized to find that such forced movement did not "occur[ ] while in the commission of" the burglary and that the movement was thus not "merely incidental" to the burglary. See OCGA § 16-5-40 (b) (1); *Deleon v. State*, 344 Ga. App. 499, 501 (1) (811 SE2d 35) (2018) (finding sufficient evidence of asportation because "[a]s alleged in the indictment, the armed robbery was complete when [the defendant] took the victim's wallet and contents at knife-point — which offense thus occurred *before* [the defendant] forced the victim to drive several miles [away]") (emphasis in original). Jefferson's argument that the victim's movement from one room to another

5

occurred during the commission of the burglary supplies no basis for disturbing the kidnapping conviction, and this claim fails.

2. Jefferson argues that the trial court erred by allowing the victim to identify him in court over his objection. During Jefferson's trial, the victim identified Jefferson as one of her attackers, testifying that she recognized Jefferson's eyes and facial structure even though he wore a mask during the attack. Relying on *Neil v. Biggers*, 409 U. S. 188, 199 (93 SCt 375, 34 LE2d 401) (1972), Jefferson argues that the trial court erred in admitting this testimony on the ground that the identification procedure was impermissibly suggestive. In support of this argument, Jefferson contends, as he did below, that the following facts tainted the identification: the victim had never previously been asked to identify him, Jefferson was one of only three African-American men in the courtroom at the time of the victim's in-court identification, the trial occurred almost two years after the offense, and the victim's assailant wore a mask during the crime. Jefferson's argument is without merit.

In-court identifications are "subject to the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial." *Ralston v. State*, 251 Ga. 682, 683-684 (2) (309 SE2d 135) (1983). In *Ralston*, the Supreme Court of Georgia held that "[a] line-up identification, or identification from a group

6

of photographs, is not a prerequisite to every in-court identification." Id. at 684 (2) (citation and punctuation omitted). In fact, this Court specifically has held that an in-court identification is not rendered inadmissible simply because the victim did not participate in a pre-trial identification procedure before making the in-court identification. See *Pitts v. State*, 323 Ga. App. 770, 772 (1) (747 SE2d 699) (2013); *Blige v. State*, 205 Ga.App. 133, 135 (4) (421 SE2d 547) (1992) (same). Consequently, the fact that the victim had not previously identified Jefferson does not render her in-court identification inadmissible.

We also reject Jefferson's argument that the trial court should have prohibited the victim's in-court identification because he was one of only three African-American men in the courtroom when the identification was made. Both the Supreme Court of Georgia and this Court previously have rejected this argument, and we are bound by that precedent. See *Ralston*, 251 Ga. at 684 (2); *Pitts*, 323 Ga. App. at 772 (1); *Williams v. State*, 174 Ga. App. 56, 56 (1) (329 SE2d 226) (1985); *Mangrum v. State*, 155 Ga. App. 334, 334 (1) (270 SE2d 874) (1980).

"[T]he problematic aspects of an in-court identification go to the identifying witness's credibility, which is solely a question for jury determination." *Pitts*, 323 Ga. App. at 772 (1) (citation and punctuation omitted). Indeed, all of Jefferson's

challenges to the victim's in-court identification go to the weight and credibility of the victim's testimony, not to its admissibility. See *Jackson v. State*, 335 Ga. App. 500, 502 (1) (782 SE2d 287) (2016). "Challenges to in-court identifications must be made through cross-examination." *Hunt v. State*, 279 Ga. 3, 4 (2) (608 SE2d 616) (2005).

Here, defense counsel cross-examined the victim about her in-court identification of Jefferson, raising questions about the victim's ability to correctly identify her assailant given that he was wearing a mask. And, the victim admitted that her identification of Jefferson was based solely on the shape of his head and the visible portion of his face from the cheekbones to the forehead. Given that Jefferson's counsel cross-examined the victim about her in-court identification of Jefferson, the admission of the in-court identification is not cause for reversal. See *Jackson*, 335 Ga. App. at 502-503 (1).

3. Finally, Jefferson contends that his trial counsel was ineffective in failing to "fully confront testifying co-defendants regarding the sentences they were avoiding by testifying." To prevail on this claim, Jefferson must show both that his trial counsel's performance was deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).

An appellant must satisfy both prongs of the *Strickland* test, and if he fails as to one prong, "it is not incumbent upon this Court to examine the other prong." *Smith v. State*, 296 Ga. 731, 733 (770 SE2d 610) (2015) (citation and punctuation omitted). To establish deficient performance, an appellant "must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in light of all the circumstances and prevailing norms. Id. (citation and punctuation omitted). To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694. After reviewing Jefferson's claim in accordance with these standards, we conclude that Jefferson has not met his burden of demonstrating that his trial counsel was ineffective.

Jefferson's co-defendants, Falkner and Gilbert, testified at trial. As Jefferson concedes, his trial counsel cross-examined the co-defendants about avoiding possible life sentences by testifying against Jefferson. Jefferson argues, however, that his trial counsel performed deficiently because his cross-examination did not adequately show

the extent of the sentences the co-defendants avoided by testifying on the State's behalf. This argument is without merit.

"[D]ecisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel. In particular, whether to impeach prosecution witnesses and how to do so are tactical decisions." *Edwards v. State*, 299 Ga. 20, 24 (2) (785 SE2d 869) (2016) (citation and punctuation omitted). "[A] tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013) (citation and punctuation omitted). Moreover, "[a]lthough an attorney is permitted to thoroughly question a testifying co-defendant regarding the details of any plea agreement, it does not necessarily follow that counsel is ineffective for failing to elicit all details of the agreement." *Edwards*, 299 Ga. at 24 (2) (citation and punctuation omitted).

Here, Gilbert testified that, in exchange for his truthful testimony at trial, the State negotiated a plea deal with him, pursuant to which he was sentenced to ten years in confinement and ten years of probation for his participation in the crimes. Falkner likewise testified that he entered into a negotiated plea agreement with the State in

10

exchange for his honest testimony and that he was thereafter sentenced to ten years of probation for his role in the crimes. On cross-examination, Jefferson's trial counsel elicited admissions from Gilbert that he did not want to testify against Jefferson, that he was only doing so as a condition of the plea agreement, and that he pled guilty "[i]n order to avoid life in prison." Trial counsel also aggressively cross-examined Falkner about his avoidance of a life sentence. Under these circumstances, Jefferson has not shown that his trial counsel's strategy in impeaching the co-defendants was unreasonable. Thus, Jefferson has not shown that his trial counsel's performance was deficient, and his claim of ineffective assistance fails. See *Davis v. State*, 306 Ga. 140, 146-147 (3) (e) (829 SE2d 321) (2019) (where trial counsel elicited testimony from witness about her potential sentence and her motive for testifying for the State, defendant failed to demonstrate that his trial counsel's cross-examination constituted deficient performance).

*Judgment affirmed. Miller, P. J., and Mercier, J., concur*.

11