**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 29, 2012**

# In the Court of Appeals of Georgia

A12A1082. CALLAHAM v. THE STATE.

ADAMS, Judge.

Anthony Callaham was tried and convicted of aggravated assault and possession of a firearm during the commission of a felony in connection with his shooting Kenneth Threats. He was sentenced to fifteen years to serve for aggravated assault and five years probation on the firearm charge. This Court reversed the conviction and remanded for new trial because the trial court expressed an opinion as to the credibility of a witness in violation of OCGA § 17-8-57. See *Callaham v. State*, 305 Ga. App. 626, 628 (1) (700 SE2d 624) (2010). On retrial, Callaham was again convicted of aggravated assault, but the jury deadlocked on the firearm charge. The same judge again sentenced Callaham to15 years to serve, but this time he ordered Callaham to pay the victim restitution. On appeal from the second conviction,

Callaham contends the trial court erred in connection with giving the jury an *Allen* charge[1] and erred by ordering restitution in favor of the victim when none had been ordered following the first trial.

The record shows the following procedural events. The second trial and closing argument occurred on a single day, whereupon the jury was sent home to return at 10:00 a.m. the next day for the jury charge. Neither side objected to that procedure. The next morning, the court charged the jury, following which there were no objections, and the jury began deliberations just before 10:35. At 11:10 a.m., the jury asked the court to repeat the definition of aggravated assault, to which there was no objection. Some time thereafter, the jury asked if they could read the testimony of two witnesses; the judge denied the request and, without objection, instructed the jury that they must rely on their collective memories concerning all testimony. The jury also noted that they were "hung up," and the State asked for an *Allen* charge; the court declined, and the jury continued deliberations. This all occurred prior to lunch; the jury had been deliberating for about two hours at this point.

---

[1] See *Allen v. United States*, 164 U. S. 492, 501 (9) (17 SC 154, 41 LE 528) (1896).

Some unknown time thereafter, the court gave an *Allen* charge without objection. At 3:40 p.m., the jury indicated that it had reached a verdict on Count 1 – aggravated assault – but that it was deadlocked on Count 2. The verdict of guilty on Count 1 was announced, following which the judge commented, "Never seen a jury so upset in trying to reach a verdict."

The prosecutor then raised the issue of restitution, and she introduced evidence regarding the amount. Callaham objected on the ground that the sentence at the first trial did not include a restitution order, that the sentence likely would not include probation, and that the evidence at the two trials was essentially the same. Ultimately, the court sentenced Callaham to 15 years with a condition that he make restitution of more than $13,000; Callaham renewed his objections.

1. Callaham argues that in light of the total charge, the *Allen* charge as given "was so coercive as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or argument of other jurors." Although Callaham did not object to the content of the *Allen* charge or the aspects of the general charge about which he complains, he contends on appeal that the trial court's charge amounted to plain error affecting his substantial rights, thereby invoking review under OCGA §

3

17-8-58 (b).[2] See *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011) ("appellate review for plain error is required whenever an appealing party properly asserts an error in jury instructions.").

In *Kelly*, our Supreme Court adopted the federal standard for determining plain error, as well as this succinct wording of the test:

> "(t)he proper inquiry ... is whether the instruction ... was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings.' [Cit.]" If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below. [Cit.]

Id. at 33 (2) (a). Furthermore, "(t)he hurdle to establishing plain error is high. . . ." Id.

(a) Under the first test – whether the instructions were erroneous – "[o]ur task is to determine whether the *Allen* charge [], considered as a whole, was so coercive as to cause a juror to abandon an honest conviction for reasons other than those based

---

[2] The State misreads Callaham's argument. He does not contend it was a breach of discretion to give the *Allen* charge; rather, he contends the content of the *Allen* charge and the charge as a whole amount to plain error. Compare *Contreras v. State*, 314 Ga. App. 825, 826-827 (2) (726 SE2d 107) (2012) (challenging circumstances in which charge was given but not the terms of the charge itself).

upon the trial or the arguments of other jurors." (Citations and punctuation omitted.) *Humphreys v. State,* 287 Ga. 63, 81 (9) (b) (694 SE2d 316) (2010).

Callaham starts by showing the court failed to give this portion of the pattern charge on the related topic of deliberations, in particular, the two emphasized parts:

> You should start your deliberations with an open mind. Consult with one another and consider each other's views. *Each of you must decide this case for yourself*, but you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion if you are convinced that it is wrong. *However, you should never surrender an honest opinion in order to be congenial or to reach a verdict solely because of the opinions of the other jurors.*

(Emphasis supplied.) Criminal Pattern Jury Instructions, Council of Superior Court Judges of Georgia, § 1.70.30. He then complains that the court's version of the *Allen* charge did not include this language from the pattern charge, in particular, the emphasized part:

> It is the law that a unanimous verdict is required. *While this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement*, it is nevertheless necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper regard for and deference to the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.

5

Id. § 1.70.70. Without the above emphasized language, together with the missing charge on deliberations, Callaham argues, the *Allen* charge actually given by the trial court was "impermissibly coercive" because it overly stressed that "Each juror should listen to the arguments of the other jurors with a disposition to be convinced by them."[3]

---

[3] The trial court in this case gave this version of the *Allen* charge:

> Your verdict should be a true verdict based on your opinion of the evidence according to the laws given to you in the charge. You are not to show favor or sympathy for one party or the other. It's your duty to consider the facts objectively without favor, affection, or sympathy for either party.

> You've been deliberating upon the case for a considerable period of time. The Court deems it proper to advise you further.

> This case has been exhaustively and carefully tried by both sides and has been submitted to you . . . for a decision and verdict, if possible, and not for disagreement. Each juror should listen to the arguments of the other jurors with a disposition to be convinced by them. If the members of the jury differ in their view of the evidence, the difference of opinion should cause them all to scrutinize the evidence more closely and to re-examine the grounds of your opinion.

Our Supreme Court has found acceptable essentially the same *Allen* charge as given here. First, this Court had held *that it was reversible error* for the trial court to give an *Allen* charge that failed to include two cautionary phrases, which are essentially the same phrases about which Callaham complains were missing here: (1) "that no juror is required to surrender his or her opinion because of the honest different opinion with another juror or other jurors, for the purpose of reaching a unanimous verdict"; and (2) that "this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement if they can conscientiously do so." *Greeson v. State*, 138 Ga. App. 572, 573-574 (3) (226 SE2d

Your duty is to decide the issues that have been submitted to you if you can conscientiously do so.

When you confer, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for taking up and maintaining[,] in a spirit of controversy[,] either side of a case. You should bear in mind at all times that[,] as jurors, you should not be advocates for either side. You should keep in mind the truth as it appears from the evidence, examined in light of the instructions of the court.

May you please again retire and try to reach a verdict.

769) (1976). But the Supreme Court summarily reversed on the ground that the decision was "in conflict with *Spaulding v. State*, 232 Ga. 411 (4) (207 SE2d 43) (1974)"; this is despite the fact that in *Spaulding* the following language *was* present: "this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement." See *State v. Greeson*, 237 Ga. 193 (1) (227 SE2d 324) (1976). The Supreme Court's decision in *Greeson* has been repeatedly followed for this point:

> the holding in *Greeson* that the "Allen" charge must include cautionary words to the jurors not to surrender their conscientious convictions has been reversed by the Supreme Court. *State v. Greeson*, 237 Ga. 193 (227 SE2d 324) (1976).

*Bankston v. State*, 149 Ga. App. 759, 760 (3) (256 SE2d 122) (1979). See also *Wilson v. State*, 145 Ga. App. 315, 321 (4) (c) (244 SE2d 355) (1978). Thus, we are constrained to find no error on the content of the *Allen* charge as given nor error regarding the combined effect of not charging the standard charge on deliberations and the omission of the relevant language in the *Allen* charge.

2. Callaham contends the restitution order was illegal and void for two reasons: (1) it was improper to award restitution when restitution was not ordered as a part of

8

the sentence following the first trial; and (2) it was improper to award restitution with a straight prison term with no probation.

(a) With regard to the first argument, "the Due Process Clause of the Fourteenth Amendment prevent[s] increased sentences when that increase [is] motivated by vindictiveness on the part of the sentencing judge." *Texas v. McCullough*, 475 U.S. 134, 137 (II) (106 SC 976, 89 LE2d 104) (1986). And, "restitution is punishment when ordered as part of a criminal sentence." (Citation and footnote omitted). *Harris v. State*, 261 Ga. 859, 861 (2) (413 SE2d 439) (1992). Thus, an increase in restitution upon retrial is subject to this rule. See generally *U. S. v. Feldman*, 825 F2d 124, 132 (7th Cir. 1987); *U. S. v. Haddock*, 50 F3d 835, 840 (C) (10th Cir. 1995) (raising but not deciding the same argument).

"[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for doing so must affirmatively appear." *North Carolina v. Pearce*, 395 U. S. 711, 726 (89 SC 2072, 23 LE2d 656) (1969).[4] This rule establishes "a presumption of vindictiveness, which may be overcome only by objective

---

[4] The Supreme Court clarified "that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights." *Wasman v. United States* 468 U. S. 559, 568 (II) (104 SC 3217, 82 LE2d 424) (1984).

information in the record justifying the increased sentence." *Wasman v. United States* 468 U. S. 559, 565 (104 SC 3217, 82 LE2d 424) (1984).[5] But where the record shows no reasonable likelihood that the increased sentence was the product of actual vindictiveness there is no basis for a presumption, and the burden remains on the defendant to prove actual vindictiveness. *Alabama v. Smith*, 490 U. S. 794, 799-800 (109 SC 2201, 104 LE2d 865) (1989); *Wasman*, 468 U. S. at 569 (II).

Here, Callaham was convicted of both aggravated assault and possession of a firearm during the commission of a felony at the first trial, but the first conviction was reversed because of judicial misconduct. Callaham was only convicted of aggravated

---

[5] Also, a sentencer is not limited to events occurring subsequent to the original sentencing:

> [Although] Pearce permits "a sentencing authority (to) justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." Wasman, 468 U.S. at 572[, 104 S.Ct., at 3225]; [Cit.]. This language [] was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified. Restricting justifications for a sentence increase to only "events that occurred subsequent to the original sentencing proceedings" could in some circumstances lead to absurd results.

*Texas v. McCullough*, 475 U. S. 134, 141 (III) (106 SC 976, 89 LE2d 104) (1986).

10

assault at the second trial, yet he received a greater sentence as a result of the restitution order. We conclude that the *Pearce* presumption applies. We therefore look to see if there is objective information in the record justifying the increased sentence.

Although restitution might have been discussed following the first trial, none was ordered. The defense attorney admitted, "The first sentence only addressed time. There's no restitution order." After the verdict was announced following the second trial, the prosecutor stated that she had evidence of "the total bill of medical expenses and lost wages for [the victim]," and evidence of "how much he's been paid out through the State, how much he can accept, how much more money he has access to, which will leave a difference of a certain amount of money." That evidence was then presented.[6]

---

[6] A witness gave detailed evidence regarding the amount the victim had been compensated by the State for lost wages ($10,000); the amount paid by the State to the victim's medical providers ($1,621.61); the victim's total medical bills and, apparently, lost wages ($38,413.69); and the amount of victim assistance money still available from the State ($13, 378.39). The victim testified that he had been receiving calls from collection agents, and he indicated that he still has medical issues that have not been addressed. He had moved to Texas and did not realize that he should be submitting his claims to the victim's assistance office in Georgia. The court instructed the victim that if he had any additional medical bills that they must be submitted to the State in order to receive victim assistance funds. The prosecutor agreed to work with the victim and victim's assistance in order to obtain further compensation from

11

The court then ordered restitution in "any amount [of the victim's damages] that's not covered by the State." Further discussion clarified that because the victim had total damages greater than that paid or available through the victim's assistance fund, the court was going to order restitution to the victim of the amount of his damages not covered by the State's victim assistance fund. The court eventually entered an award of $13,378.69.

It is apparent from the evidence presented that some of the information about the victim's damages came from a time after the sentencing following the first trial. Given that, together with the evidence presented regarding the victim's damages and compensation from the State, we conclude that there is objective information in the record justifying the restitution order thereby rebutting the *Pearce* presumption.

(b) Callaham relies on *Queen v. State*, 210 Ga. App. 588 (436 SE2d 714) (1993), for the assertion that restitution cannot be awarded without a sentence that includes probation. But *Queen* was based on language that has been removed from the relevant statute by amendment, and it is therefore no longer controlling on this issue. *Queen* relied on the fact that, at the time, "A restitution order [was] one which requires an offender to make restitution as a condition of 'relief granted to an

the State for the outstanding bills.

12

offender,' OCGA § 17-14-2 (8)"; and based on the definition of relief, the court held that restitution could not be ordered where the defendant was sentenced only to confinement. Id. at 589 (2). But in 2005, that Code Section was amended, and the phrase "as a condition of relief granted to an offender" was deleted. See 2005 Ga. L. 2005, p. ___ (Act 20), § 5 (and same condition deleted from OCGA § 17-14-3). Under the current law, restitution may be ordered "in addition to any other penalty imposed by law." OCGA § 17-14-3. See also OCGA § 17-14-2 (8) ("'Restitution order' means any order, decree, or judgment of an ordering authority which requires an offender to make restitution."). Accordingly, we find no error.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*