**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 13, 2013**

# In the Court of Appeals of Georgia

A12A1732. PARKER v. THE STATE.

BRANCH, Judge.

Cedrick B. Parker was tried by jury and convicted of burglary, aggravated battery, aggravated assault, robbery by intimidation, and robbery by force. Following the denial of his motion for new trial, Parker appeals. He challenges the sufficiency of the evidence of identification, and he contends the trial court erred with regard to awarding restitution. We affirm his conviction but vacate the restitution order and remand for a hearing on that issue.

1. When the appellate courts review the sufficiency of the evidence, they do not "re-weigh the evidence" or resolve conflicts in the testimony; instead they defer "to the jury's assessment of the weight and credibility of the evidence." (Citation omitted.) *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010). See also *Glaze*

*v. State*, 317 Ga. App. 679, 680-681(1) (732 SE2d 771) (2012). Appellate courts determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

Construed in favor of the convictions, the evidence shows that Parker knocked on 85-year-old Esther Eckstein's door and asked for something to eat and drink. Eckstein had seen Parker twice before, when he previously asked her for money and had a conversation. Eckstein took Parker some food outside, but when she went to the kitchen to get water, Parker appeared in the living room and refused Eckstein's protests to get out of the house. Eckstein retreated to her bedroom in an attempt to get away, but Parker followed her. When Eckstein sat on the bed, Parker pulled off Eckstein's diamond rings from her fingers so hard that her arm became bruised in the process; Eckstein testified that the rings were valued at $10,000. Parker demanded money and threatened to rape Eckstein if she failed to comply. Parker took some costume jewelry from Eckstein's dresser and $20 from Eckstein's purse against her will. At some point, Parker grabbed Eckstein by the neck from behind and pushed her down; Eckstein collapsed to the floor, breaking her hip. Either at the same time or at

2

another point, Parker choked Eckstein, bruising her throat and leaving her with pain that continued through the time of trial. Eckstein eventually fainted and was found by a family member who called for an ambulance.

Eckstein had at least 30 minutes to observe Parker during the crimes. She testified that Parker was wearing a cap and had the sides of his head shaved. She also described a distinctive jacket that Parker was wearing. Eckstein identified Parker in court as the perpetrator. The State introduced a jacket that Parker admitted was his , and Eckstein identified it as the jacket Parker was wearing on the day of the crimes. Eckstein's neighbor identified Parker as the person to whom he saw Eckstein talking that morning. Parker testified and admitted that at the time of the incident he wore his hair "skinned" or cut short all the way around the sides and that he kept a cap on.

Parker challenges the sufficiency of the evidence of identification and contends the State failed to exclude a reasonable theory of innocence – that another suspect committed the crime. Among other things, he points to evidence that Eckstein failed to pick him out of a photographic lineup. But the issue of identification was fully presented to the jury including the possibility of misidentification. In addition to the evidence set forth above, the jury was given evidence that Eckstein's neighbor initially identified another suspect but eventually identified Parker as the suspect and that the

3

investigation failed to produce any useful fingerprint evidence Parker also was allowed to present the testimony of a police officer that he initially investigated a different suspect who appeared to match Eckstein's description.[1] The jury was able to compare Eckstein's description of the perpetrator with both Parker and a picture of the other suspect.

In sum, sufficient evidence was presented to identify Parker as the assailant: the victim and a neighbor identified Parker, the victim identified Parker's jacket, and the victim's description of Parker's hair and hat matched Parker's own description. And the jury was presented all other evidence concerning Parker's possible misidentification. Arguments about discrepancies in the victim's testimony and credibility and other factual issues "relate entirely to matters within the exclusive province of a jury." (Citation and punctuation omitted.) *Smith v. State*, 216 Ga. App. 415, 416 (1) (454 SE2d 615) (1995). "Determining the credibility of witnesses and resolving conflicts goes to the weight of the evidence and is for the jury's

---

[1] This other suspect, who also lived in the neighborhood, had been seen by officers who canvassed the neighborhood after the crimes, and one officer took the other suspect's picture. The jury learned that when the police initially questioned Eckstein's neighbor about whom he had seen talking to Eckstein that morning, the neighbor looked at the picture of the other suspect and said, that's him. The jury learned that officers questioned this other suspect but that they did not search his house. And Parker introduced a picture of the other suspect into evidence.

4

consideration." (Citations and punctuation omitted.) Id. Our conclusion also resolves Parker's argument that the State failed to exclude the possibility that the other suspect committed the crime.

> Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Citation and punctuation omitted.) *Wilson v. State*, 275 Ga. 53, 56 (1) (562 SE2d 164) (2002).

2. Following Parker's conviction, the court sentenced him to a total of 27 years, with 17 to serve followed by 10 years on probation. Immediately after announcing the sentence and without input from the prosecutor or Parker, the court added the following:

> Although it may not be collectable, the testimony is she lost ten thousand dollars worth of personal property. Restitution is ordered in that amount.

The court did not conduct a hearing or take any evidence on the matter of restitution. The judgment shows that Parker was ordered to pay the restitution as a condition of

his probation. On appeal, Parker argues that the trial court erred (1) by failing to hold a hearing to consider the factors required by OCGA § 17-14-10 and (2) because the evidence was insufficient to establish fair market value. The State argues that Parker waived any objection to the amount of restitution ordered by failing to object when the restitution order was announced.

Under the current law of restitution, Parker was not required to take any affirmative action to trigger a hearing on restitution. Given that restitution was ordered as a part of Parker's probation, both OCGA §§ 42-8-35 (a) (7) and 17-14-7 (b) are applicable to this case.[2] The first of these Code sections provides that the restitution amount must be adjudicated if the amount of damage or loss caused by the probationer "is in dispute":

> Unless otherwise provided by law, no reparation or restitution to any
> aggrieved person for the damage or loss caused by the probationer's

---

[2] See OCGA §§ 17-14-3 (a) (courts required to order restitution under Chapter 14 of article 17); 17-14-3 (b) (if offender placed on probation under Chapter 8 of Title 42, "restitution ordered under this Code section shall be a condition of that probation, sentence, or order"); 17-14-19 (restitution under Article 1 of Chapter 14 of Title 17 "shall not be construed to limit or abrogate any power of any court. . . to place other conditions. . on any relief in the nature of sentence, probation, parole, pardon, or restoration of rights"). Compare OCGA § 17-14-3 (restitution may be ordered "in addition to any other penalty imposed by law"); *Callaham v. State*, 317 Ga. App. 513, 519 (2) (b) (732 SE2d 88) (2012).

6

offense shall be made if the amount is in dispute unless the same has been adjudicated[.]

OCGA § 42-8-35 (a) (7). This Court has interpreted this clause to mean that, "as a prerequisite to [a restitution] adjudication, the defendant *must dispute* the amount of restitution ordered by the trial court." *Williams v. State*, 180 Ga. App. 854, 856 (3) (a) (350 SE2d 837) (1986) (emphasis supplied). The second of these Code sections – OCGA § 17-14-7 (b) – which was enacted in 2005,[3] however, provides that "[i]f the parties have not agreed on the amount of restitution prior to sentencing," the ordering authority must hold a hearing on the matter. Under the plain language of this Code section, the trigger for a hearing is *the absence of a showing* that the parties have agreed on the amount of restitution, and the determination is to be made "prior to sentencing," not after restitution is ordered by the trial court. There is, therefore, a conflict between the two statutes regarding the trigger for a hearing on restitution.

Although appellate courts should attempt to construe newer statutes "in connection and in harmony with the existing law, " *Lamad Ministries v. Dougherty County Bd. of Tax Assessors*, 268 Ga. App. 798, 801 (1) (602 SE2d 845) (2004),

---

[3] The "Crime Victims Restitution Act of 2005" became effective on July 1 of that year, and OCGA § 17-14-7 (b) was added at that time. Ga. L. 2005, p. 88, §§ 1, 8. Compare Ga. L. 1980, p. 1382, § 1.

7

where an actual conflict exists, "the most recent legislative expression prevails." *Pawnmart, Inc. v. Gwinnett County*, 279 Ga. 19, 20 (2) (608 SE2d 639) (2005). See also *Gunn v. Balkcom*, 228 Ga. 802, 804 (188 SE2d 500) (1972) ("the latest expression of the legislative intent").

Accordingly, in the absence of a showing that the parties have "agreed on the amount of restitution prior to sentencing," a hearing to determine restitution is required. See also *McCart v. State*, 289 Ga. App. 830, 832 (1) (658 SE2d 465) (2008) ("[A] hearing on the issue of restitution is [ ] required if the parties cannot agree on an amount prior to sentencing." Citing OCGA § 17-14-7 (b)).[4] Decisions of this Court that require the defendant to dispute the amount of restitution – either before or after the court orders restitution – to trigger a hearing on restitution have been superceded by a change in the law and are therefore distinguishable. See, e.g., *Woods v. State*, 205 Ga. App. 500, 503 (422 SE2d 670) (1992) (because appellant did not request a hearing on the amount of restitution or contest the State's evidence of damages appellant may not challenge restitution amount); *Patrick v. State*, 184 Ga. App. 260, 261 (361 SE2d 251) (1987) (court did not err in failing to adjudicate restitution amount since

---

[4] At any such hearing, the court is required to consider the factors set forth in OCGA § 17-14-10.

8

defendant did not dispute the sentence at the time it was imposed); *Williams*, 180 Ga. App. at 855-856 (3) (a) ("as a prerequisite to such an adjudication, the defendant must dispute the amount of restitution ordered by the trial court."); *Johnston v. State*, 165 Ga. App. 792, 793 (2) (302 SE2d 708) (1983) (defendant entitled to adjudication of amount of restitution only when amount is in dispute); *Cobb v. State*, 162 Ga. App. 314 (4) (291 SE2d 390) (1982) (restitution properly imposed without adjudication given defendant failed to dispute or contest amount ordered by trial court); *Johnson v. State*, 156 Ga. App. 511 (274 SE2d 669) (1980) ("Pursuant to this statute, a defendant who does not agree to the amount of restitution ordered by the trial court is normally required to contest the issue at the time the condition is imposed.")

In this case, there is no indication that the parties agreed on the amount of restitution prior to sentencing. The court simply announced the restitution order during sentencing without a hearing or any discussion whatsoever, and without any input from the defendant. Compare *Ezebuiro v. State*, 308 Ga. App. 282, 285 (2) (a) (707 SE2d 182) (2011) (waiver where defendant was allowed to offer argument on restitution and did not object with proceeding to decide restitution at that time); *Futch v. State*, 314 Ga. App. 294 (723 SE2d 714) (2012) (following *Ezebuiro*); *Cameron v. State*, 295 Ga. App. 670, 671 (2) (673 SE2d 59) (2009) (after colloquy on restitution

9

and consultation with counsel, defendant acquiesced in restitution order by agreeing to proceed without a hearing to secure a more lenient sentence). We therefore vacate the order of restitution and remand for a hearing on the matter in accordance with OCGA § 17-14-1 et seq.

*Judgment affirmed in part and vacated in part, and case remanded. Miller, P. J., and Ray, J., concur.*