**FIRST DIVISION**
**DOYLE, C.J.**
**PHIPPS, P.J. and PETERSON, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 25, 2016**

# In the Court of Appeals of Georgia

A15A1883. JACKSON v. THE STATE.                                    PE-038C

PETERSON, Judge.

Leandrew Jackson appeals his convictions for four counts of aggravated assault, two counts of armed robbery, and one count of burglary. He raises three enumerations of error: (1) the trial court erred by letting a witness make an in-court identification of him; (2) there was insufficient evidence to support his convictions; and (3) the trial court erred in issuing a modified *Allen* charge that told jurors that "the case will not go away with a hung verdict ."

We find these arguments to be without merit and affirm. Although Jackson complains that the witness should not have been permitted to identify him at trial due to various factors, including that the witness identified someone else as the perpetrator in a police photo lineup shortly after the crime, challenges to in-court

identifications go to the weight and credibility, not the admissibility, of the identification. A thorough review of the record shows sufficient evidence to uphold Jackson's convictions. Finally, the judge's comment in giving the *Allen* charge is not cause for reversal because Jackson did not preserve his objection and the remark did not constitute error.

The charges against Jackson were based on two separate incidents. The trial evidence showed that in the first incident, on the evening of December 1, 2011, Charles Mapp was performing his duties as a driver for a Medicaid transportation service . Mapp had just dropped off his last client for the day and was getting back into his van when he noticed two men approaching his vehicle from behind . The two men told Mapp to "give it up," and one produced a gun . Mapp tried to give them what he had in his pockets: change, his wallet, and his cell phone . The men pulled Mapp out of the van, and kicked and punched him . One struck him over the head with the gun .

On December 5, 2011, police showed Mapp a photographic lineup that did not contain a photo of the defendant . He circled one of the photos, indicating he was 80 percent sure that person was the man who had wielded the gun . The person he identified was not involved in the incident . At the 2013 trial in this case, Mapp

identified Jackson as the person with the gun . Jackson's trial counsel objected to Mapp's in-court identification of Jackson, saying, "There's been no foundation that he's identified anybody before," but the trial court overruled him . A crime scene investigator also testified at trial, saying that a fingerprint found on the interior side of the driver's side window of Mapp's van was left by Jackson .

The evening after Mapp was accosted, Donald Rooks and Stacy Allgood were working at a customer's townhome, performing carpet repair and cleaning . When Rooks went downstairs to get equipment, a man attacked him with a hammer . A second man appeared, struck Rooks in the head with a gun, and pointed the gun at Rooks' face . Rooks threw his wallet, from which one of the men took five dollars . Rooks was not able to identify either of the two men .

At some point, hearing Rooks calling for help, Allgood came downstairs and saw Rooks scuffling with the man with the hammer . Someone struck Allgood in the back of the head with what Allgood believed was a gun . Rooks' initial attacker struck Allgood in the head with a hammer . The man with the gun told Allgood to empty his pockets, turning the gun toward himself so that Allgood could see the size of the gun . Allgood refused, explaining later that he had "a pretty good bit of money" in there . The second man again hit Allgood in the head with a gun .

Allgood did not identify anyone as his attacker in an initial police photo lineup on December 5, 2011, but he was able to identify Jackson in a similar photo lineup the following month, saying he was 87 percent sure . At trial, Allgood identified Jackson as the man with the gun . He testified that his lack of certainty during the second photo lineup was due to not knowing the height of the person in the photo or whether the person who attacked him was part of the photo lineup . He testified that he was sure of his identification at trial based on Jackson's eyes .

Based on the Mapp incident, Jackson was indicted for armed robbery and aggravated assault . Based on the incident at the townhome, the indictment charged Jackson with armed robbery, burglary, and three counts of aggravated assault . A jury found Jackson guilty on all charges .

1.      Because Jackson's sufficiency argument is based in part on his argument that the trial court erred in letting Mapp make an in-court identification, we first address the issue of the identification. Jackson argues that the trial court erred in allowing Mapp to make an in-court identification that was "unnecessarily suggestive and conducive to irreparable mistaken identification " because Mapp was unable to get a good look at his assailants and he identified another individual as his attacker

in a police photo lineup that took place four days after the incident. Jackson's argument is without merit.

The admission of pretrial identification procedures like police photo lineups is subject to court review for reliability, considering factors such as the witness's opportunity to view the defendant at the time of the crime. *See Neil v. Biggers*, 409 U.S. 188, 199 (93 S. Ct. 375, 34 LE2d 401) (1972). However, appellate courts do not review in-court identifications in this manner, as they occur under the immediate supervision of the trial court. *See Ralston v. State*, 251 Ga. 682, 683 (2) (309 SE2d 135) (1983). "Challenges to in-court identifications must be made through cross-examination." *Hunt v. State*, 279 Ga. 3, 4 (2) (608 SE2d 616) (2005) (citation omitted*)*. Jackson's challenges to Mapp's in-court identification, including the inconsistency in Mapp's in-court and pre-trial identifications, go to the weight and credibility of Mapp's testimony, not to its admissibility. *See Sherman v. State*, 225 Ga. App. 869, 872 (2) (485 SE2d 557) (1997). *See also Pitts v. State*, 323 Ga. App. 770, 772 (1) (747 SE2d 699) (2013) (problematic aspects of an in-court identification go to the witness's credibility, which is solely a question for jury determination). "A line-up identification, or identification from a group of photographs, is not a prerequisite to every in-court identification." *Ralston,* 251 Ga. at 684 (2) (*quoting*

*Puckett v. State*, 233 Ga. 449, 451 (211 SE2d 740) (1975)). Given that Jackson's counsel had the opportunity to cross-examine—and, indeed, did cross-examine—Mapp about his in-court identification of Jackson and his failure to identify him in the pretrial photo lineup , the admission of the in-court identification is not cause for reversal.

2. Jackson challenges all seven of his convictions as unsupported by sufficient evidence . When appellate courts review the sufficiency of the evidence, they do not "re-weigh the evidence or resolve conflicts in witness testimony" but instead defer "to the jury's assessment of the weight and credibility of the evidence." *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010) (citation omitted). We apply the standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (99 S. Ct. 2781, 61 LE2d 560) (1979), determining whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted; emphasis in original).

Count one charged Jackson with armed robbery of Mapp . OCGA § 16-8-41(a) provides that a person commits armed robbery when, "with intent to commit theft, he or she takes property of another from the person or the immediate presence of another

6

by use of an offensive weapon[.]" Count two, also arising from the incident involving Mapp, charged Jackson with aggravated assault , which under OCGA § 16-5-21(b)(2) is predicated on a person assaulting another with a deadly weapon or any object that, "when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" Jackson bases his challenges to these two counts on the notion that Mapp's identification of him should be excluded, but, as explained above, the admission of this evidence was not improper. Given that "[t]he testimony of a single witness is generally sufficient to establish a fact," OCGA § 24-14-8, Mapp's testimony was sufficient to support the convictions on counts one and two. The State also introduced evidence that Jackson's fingerprint was found on Mapp's van, supporting its case that Jackson was one of the men who accosted Mapp. In the light of this evidence, the jury was authorized to find that Jackson committed both armed robbery and aggravated assault on Mapp.

The other convictions turn on Allgood's identification of Jackson as the man with the gun. Although Jackson does not challenge the admissibility of Allgood's in-court identification of him, he claims that the evidence against him is insufficient because Rooks was unable to identify him and Allgood initially failed to identify him in a police photo lineup and expressed some uncertainty in identifying him in a

7

second photo lineup. However, as noted above, the testimony of a single witness is generally sufficient to establish a fact. OCGA § 24-14-8. Allgood's identification of Jackson as the man with the gun, coupled with Rooks' description of events, is sufficient evidence to authorize the jury's verdict of guilty on the charges stemming from the townhouse incident, including burglary. *See* OCGA § 16-7-1(b) (a person commits the offense of burglary when, "without authority and with the intent to commit a felony or theft therein," he enters or remains within the dwelling house of another).

3. Jackson also argues that the trial court erred in issuing a modified charge under *Allen v. United States*, 164 U.S. 492 (17 S. Ct. 154, 41 LE 528) (1896). He complains about one particular remark the judge made to the jury. During its deliberations, the jury asked multiple questions, including asking for equipment to listen to the recording of one of the 911 calls that had been put into evidence and also asking if it might review a witness's testimony . The judge allowed the 911 call to be played for the jury in the courtroom and denied the jury's request to review the witness's testimony . Sometime later, after the jury had deliberated for two and a half hours in the morning and an hour and 35 minutes in the afternoon, the jury indicated that it had reached a guilty verdict on two of the seven counts but was hung 11-1 on

8

the other five . Defense counsel said he was against an *Allen* charge, but the trial court decided to give one at the prosecutor's request .

While giving the *Allen* charge, the trial court said, "I want you to take a look at it, because we spent a day and a half trying it. These cases, the case will not go away with a hung verdict. There are many ways it can go away, jury verdict is one and there are many other ways ." The judge continued with some additional remarks before sending the jury out to resume deliberations. The judge then asked whether there were any "exceptions to the, quote, hung jury charge as given by the Court," to which defense counsel replied, "No exception, Your Honor. " The jury subsequently returned guilty verdicts on the remaining counts . It is not clear from the record how long jurors continued to deliberate after receiving the *Allen* charge, but it appears to have been less than one hour and 18 minutes, perhaps considerably less . At defense counsel's request, the judge polled the jurors, with each affirming their assent to the verdict .

On appeal, Jackson complains that the trial court's comment that the case would not "go away" placed undue pressure on the hold-out juror. He argues that the extra comment conveyed the judge's opinion that there was enough evidence to retry

the case and possibly implied that a guilty verdict was inevitable.[1] Considered along with other factors, the defense argues, the judge's comment was coercive.

We are constrained in our review of the judge's comment, however, given that the defendant failed to lodge any specific objection to it. Asked by the judge whether he took any exceptions to the *Allen* charge, Jackson's counsel said he had none. Georgia law requires a criminal defendant to inform the court of any specific objection to a jury instruction and the grounds for such objection before the jury retires to deliberate. *See Carruth v. State*, 290 Ga. 342, 347 (6) (721 SE2d 80) (2012). Otherwise, appellate review is precluded under OCGA § 17-8-58(b) "unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." *See id.* (applying plain error review where defendant objected at the charge conference when the court informed counsel it would not give a requested instruction on mutual combat but failed to object to the actual jury charge as given). Our court has applied plain error review under OCGA § 17-8-58(b) when a defendant did not object to the content of the *Allen* charge. *See Callaham v. State*, 317 Ga. App.

---

[1]Jackson does not cite OCGA § 17-8-57, which declares it "is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." The complained-of remark did not constitute an expression of opinion as to the facts of the case or the defendant's guilt.

513, 515 (1) (732 SE2d 88) (2012). Under that standard, the court must consider "whether the instruction ... was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings." *Id.* (*quoting State v. Kelly*, 290 Ga. 29, 33 (1) (718 SE2d 232) (2011)). If it answers all three of these questions in the affirmative, the appellate court may reverse "if the error seriously affects the fairness, integrity, or public reputation of the proceedings below." *Id.*

Here, the judge's comments do not constitute error at all. In considering whether the remarks were erroneous, the court is to consider "whether the *Allen* charge ..., considered as a whole, was so coercive as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *Id.* (*quoting Humphreys v. State*, 287 Ga. 63, 81 (9) (b) (694 SE2d 316) (2010)). Here, the bulk of the instruction largely tracked the state's pattern charge. Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2015), § 1.70.70 (hung jury). The trial court added some additional remarks, including that complained of here by Jackson. But those additional remarks urged jurors to follow their consciences and assured them that a hung verdict was an acceptable outcome. Looking at the *Allen* charge as a whole, it is notable that the trial court told jurors:

11

- "If you can't come out in a unanimous agreement and say, answer those questions that, yes, this is my verdict, it was my verdict in the jury room, it's my verdict now, I don't want somebody to roll over if they can't come out here and tell me that, because that means they've simply acquiesced to the others ."

- "I am counting on my foreperson to report out to me if, in fact, he feels at any time that communications have broken down to the point that continued deliberations are fruitless. And if that's in five minutes, so be it ."

- "Essentially, whatever your verdict is, it needs to speak the truth; and if eleven to one speaks the truth for each of you, I'm all right with that ."

- "I'll ask you to continue deliberations until the foreperson tells me either we have a verdict, or he does not feel that it would be fruitful to continue deliberating. And I'll leave that up to y'all ."

Most importantly, far from indicating that a guilty verdict was inevitable, the judge immediately clarified what he meant when he said the case would not "go away" with a hung verdict, explaining that a jury verdict was just one of the ways a case could

12

"go away ." *Cf. Burchette v. State*, 278 Ga. 1, 2-3 (596 SE2d 162) (2004) (disapproving as inaccurate use of language in prior pattern charge for hung juries that said, "This case must be decided by some jury selected in the same manner this jury was selected and there is no reason to think a jury better qualified than you would ever be chosen," while affirming the defendant's conviction on the basis that the remark was not impermissibly coercive within the context of "an otherwise balanced and fair *Allen* charge").

Jackson argues that the *Allen* charge constituted coercion in the light of the relatively short time the jury deliberated, the serious questions that they had posed to the judge, and the fact that only one juror was a holdout against the verdict. However, the length of deliberations alone does not make an *Allen* charge coercive. *Gamble v. State*, 291 Ga. 581, 584 (5) (731 SE2d 758) (2012) (citations omitted). Our Supreme Court also has found that circumstances did not suggest coercion in a case with a similar timeline of deliberations and in which the jury had reached verdicts on some charges but was divided 11-1 on one charge. *Drayton v. State*, 297 Ga. 743, 749 (2)(b) (778 SE2d 179) (2015). We fail to see how the jurors' questions—indicating they were taking their task seriously—suggest the instruction was coercive. In sum,

13

we cannot say the judge's comment created an impermissibly coercive charge or otherwise amounted to any sort of error.

*Judgment affirmed. Doyle, C.J., and Phipps, P.J., concur.*