24CA0818 Peo v Sarabia-Martinez 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0818
City and County of Denver District Court No. 14CR10280
Honorable Alex C. Myers, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jose Ricardo Sarabia-Martinez,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE GOMEZ
Moultrie and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Tara Jorfald, Alternate Defense Counsel, Bryan Collins, Alternate Defense
Counsel, Lakewood, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Jose Ricardo Sarabia-Martinez, appeals the trial court's order imposing $1,077,217.94 in restitution after a jury found him guilty of violations of the Colorado Organized Crime Control Act (COCCA) and other crimes stemming from a fraudulent mortgage scheme carried out by his family business.  He contends that the trial court erred by (1) unreasonably delaying its issuance of the order; and (2) ordering an amount of restitution that exceeded the original amount awarded, before he obtained reversal of his convictions in an earlier appeal and was retried.  We reject both contentions and, therefore, affirm.

I.     Background

¶ 2     Sarabia-Martinez and several of his family members ran a fraudulent mortgage scheme through a series of family-owned businesses.  The scheme generally involved the use of a straw buyer to purchase a residential property and then sell it to a second straw buyer at a higher price.  That second buyer would obtain a mortgage loan through false representations and wouldn't make any payments on the loan, causing it to go into foreclosure, but not before the family business netted the proceeds from the second

sale, as well as other fees and commissions for its handling of both closing processes.

¶ 3      Sarabia-Martinez was eventually indicted by a grand jury on nineteen criminal counts.  After his first trial, he was convicted on several counts and sentenced to a term of twenty-four years in the custody of the Department of Corrections (DOC).  The prosecution requested, and the trial court granted, an award of $951,571.57 in restitution for losses suffered by the Small Business Administration (SBA), which had guaranteed a loan on a commercial property the family business used as an office, and by the lenders that had extended loans on the five residential properties at issue in the case.  On direct appeal, a division of this court reversed the judgment and ordered a new trial due to the erroneous admission of evidence.  *People v. Sarabia-Martinez*, (Colo. App. No. 16CA2134, Dec. 19, 2019) (not published pursuant to C.A.R. 35(e)).

¶ 4      After a retrial in August 2022, Sarabia-Martinez was again convicted on most of the same charges, including two COCCA counts, six forgery counts, and one criminal impersonation count. The prosecution again sought restitution for the SBA and the lenders.

2

¶ 5    On the date the sentencing hearing was initially scheduled, the parties agreed to continue that hearing as well as the scheduled restitution hearing due to delays in receiving the presentence investigation report, Sarabia-Martinez's anticipated filing of post-trial motions (for which he was awaiting trial transcripts), and his request to obtain rulings on those motions before sentencing.  The court, apparently assuming at the time that it needed to hold the restitution hearing within ninety-one days of entry of the jury verdict, asked Sarabia-Martinez if he objected to extending the deadline.  Sarabia-Martinez responded, "I don't have any objection," and the court expressly found justifiable and extenuating circumstances under *People v. Weeks*, 2021 CO 75, to extend the restitution hearing date.

¶ 6    Due to various delays — including delays for the court to appoint counsel for Sarabia-Martinez (who had represented himself during the second trial) and for his newly appointed counsel to get up to speed on the sentencing and restitution issues — the sentencing hearing didn't occur until July 28, 2023.  The court initially had a hearing set for both sentencing and restitution on that date, but defense counsel requested another continuance to

have more time to prepare on both issues, and the court denied the request as to sentencing but granted it as to restitution. The court sentenced Sarabia-Martinez to a term of twenty years in the custody of the DOC and reset the restitution hearing for October 30. It then had the following colloquy with Sarabia-Martinez concerning his waiver of the right to have a restitution order entered within ninety-one days:

> The [C]ourt: Under the law in Colorado, restitution orders have to be entered within 91 days of sentencing. As we were just saying, that is roughly October 30th of this year. Your counsel's been asking now, for some time, for additional time to ensure he can have an adequate opportunity to review the record and confirm with the prosecution as to what that restitution amount might be, if it's stipulated or, at a minimum, to prepare for a hearing. Because we're sitting here on the last day, I do need just to advise you that I'm doing that, understanding that there would be a waiver of your right to have that restitution order entered within 91 days, and also I'm asking for an agreement from you that there is good cause for delaying an entry of restitution beyond 91 days for those reasons. Do you understand what I'm asking you?

> [Sarabia-Martinez]: Yes, your honor.

> The [C]ourt: And are you in agreement that you're willing to waive your right and the statutory right, to the extent that's required of

4

you, to have a restitution order entered within 91 days of today?

[Sarabia-Martinez]: Yes, your honor.

The [C]ourt: And you're willing to do that?

[Sarabia-Martinez]: Yes.

¶ 7 After additional inquiries regarding the knowing, voluntary, and intelligent nature of Sarabia-Martinez's waiver, the court accepted the waiver and found good cause under *Weeks* to delay issuance of the restitution order.

¶ 8 The restitution hearing went forward on October 30, 2023. Afterward, the court took the matter under advisement, noted that Sarabia-Martinez had already waived the ninety-one-day deadline, and said it would issue a written order "in due course" after it had an opportunity to review the figures the prosecution had presented and the new arguments the defense had made at the hearing.

¶ 9 About five months later, on March 26, 2024, the court entered its restitution order, awarding the full $1,077,217.94 the prosecution had requested. This appeal followed.

## II. Timeliness of the Restitution Order

¶ 10 Sarabia-Martinez first contends that the trial court erred by "causing an unreasonable delay in issuing its restitution order."

Specifically, he points to the court's delay of 148 days between the restitution hearing and the order establishing the amount of restitution. We decline to address this issue because we conclude that Sarabia-Martinez waived it.

¶ 11      At the time of Sarabia-Martinez's sentencing in 2023, the restitution statute required that when a trial court ordered restitution at sentencing but left the amount open, the court had to resolve the amount within ninety-one days unless it made an express finding of good cause for delay before the deadline expired. *See* § 18-1.3-603(1)(b), C.R.S. 2023; *Weeks*, ¶¶ 39-40, 44; *People v. Roddy*, 2021 CO 74, ¶ 19.[1] A court lacks authority to order any restitution if it doesn't comply with this deadline. *Weeks*, ¶ 45.

¶ 12      But the deadline for determining the amount of restitution is not jurisdictional and can be waived. *Babcock v. People*, 2025 CO 26, ¶ 27. We review de novo whether a claim is waived. *Id.* at ¶ 28.

¶ 13      Waiver is "the intentional relinquishment of a known right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (emphasis omitted)

---

[1] The statutory deadline has since been amended, but we apply the provisions in effect at the time of Sarabia-Martinez's sentencing. *See* Ch. 307, sec. 2, 2025 Colo. Sess. Laws 1607.

(quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)).  When, as here, statutory rights are involved, waiver "must be voluntary, but need not be knowing and intelligent."  *People v. Roberson*, 2025 CO 30, ¶ 13 (quoting *Finney v. People*, 2014 CO 38, ¶ 16).  Waiver may be explicit, such as "when a party expressly abandons an existing right or privilege," or implied, such as "when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion."  *Forgette v. People*, 2023 CO 4, ¶ 28.  Waiver extinguishes error and therefore any appellate review.  *Rediger*, ¶ 40.

¶ 14    Much like the defendant in *Roberson*, ¶¶ 7-8, 16-17, Sarabia-Martinez waived the statutory deadline when his counsel, who was new to the case, repeatedly sought and obtained continuances of the restitution hearing and only later complained about the length of time it took to resolve the restitution issues.  In addition to obtaining continuances at his counsel's behest, Sarabia-Martinez also expressly waived the restitution deadline in a colloquy with the court immediately after sentencing.  Sarabia-Martinez's actions, and his failure thereafter to attempt to revoke his waiver or seek an earlier ruling from the court, waived any objection he may have had

to the timing of the restitution order.  In short, given that he argued for months that the restitution issues were complex and required significant time to fully understand and address, and that he never argued otherwise or requested an earlier resolution from the court, he cannot now argue that the court took too long to resolve the issues.  *See id.*; *see also Babcock*, ¶ 30 (the defendant waived compliance with the ninety-one-day deadline by requesting a hearing date after expiration of the deadline).

## III.    Amount of the Restitution Order

¶ 15    Sarabia-Martinez also contends that the trial court violated his double jeopardy and due process rights by awarding restitution in an amount that exceeds the amount he was ordered to pay after his first trial.  We're not persuaded.

¶ 16    We review constitutional challenges to sentencing determinations de novo.  *People v. Rojas*, 2025 COA 25, ¶ 24.

¶ 17    As part of a defendant's protection against double jeopardy, a trial court may not increase a legal sentence once the sentence has been imposed and the defendant has started serving it.  *People v. Woellhaf*, 199 P.3d 27, 29-30 (Colo. App. 2007).  Similarly, a trial court may not increase the amount of restitution — which "has the

8

effect of increasing the punishment originally imposed" — once a legal sentence has been imposed and the defendant has started serving it. *People v. Harman*, 97 P.3d 290, 293 (Colo. App. 2004), *overruled on other grounds by, Weeks*, ¶ 47 n.16.

¶ 18    But the protection against double jeopardy doesn't preclude a trial court from imposing a more severe sentence when a defendant is reconvicted after a successful appeal and retrial. *North Carolina v. Pearce*, 395 U.S. 711, 723 (1969); *People v. Cook*, 2014 COA 33, ¶ 23. Nonetheless, in that circumstance, the right to due process requires that "vindictiveness against a defendant for having successfully attacked his first conviction . . . play no part in the sentence he receives after a new trial." *Pearce*, 395 U.S. at 725; *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" (citations omitted)).

¶ 19    A rebuttable presumption that the new sentence resulted from vindictiveness arises if (1) the new sentence is more severe than the

9

original one and (2) there is a reasonable likelihood that actual vindictiveness played a part in the resentencing. *People v. Johnson*, 2015 CO 70, ¶ 22. As to the first requirement, our supreme court has adopted an aggregate approach for determining whether a new sentence is more severe, looking at whether the aggregate time of incarceration exceeds the aggregate time from the original sentence. *Id.* at ¶ 37. As to the second, the United States Supreme Court has applied the presumption in instances when a trial court imposed a more severe sentence after a successful appeal followed by a new trial, *see Pearce*, 395 U.S. at 725; *Wasman v. United States*, 468 U.S. 559, 569 (1984), but has declined to apply it when the circumstances in a particular case undercut any assumption that the new sentence was the result of vindictiveness, *see, e.g.,* *Alabama v. Smith*, 490 U.S. 794, 801 (1989) (the presumption didn't apply when a higher sentence was imposed after a trial and the earlier sentence had followed a guilty plea); *Texas v. McCullough*, 475 U.S. 134, 138-40 (1986) (the presumption didn't apply when the retrial was ordered by the trial judge, not by an appellate court, and a different judge conducted the resentencing after the retrial).

¶ 20 When the presumption of vindictiveness in a sentence applies, it may be rebutted if the court "carefully explain[s] [the] reasons for imposing the greater sentence." *Wasman*, 468 U.S. at 569; *accord Pearce*, 385 U.S. at 726 ("[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for . . . doing so must affirmatively appear."). "Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 U.S. at 726.

¶ 21 If the prosecution doesn't rebut the presumption, the new sentence is invalid. *Johnson*, ¶ 19. But if it rebuts the presumption, the burden shifts to the defendant to prove the new sentence arose out of actual vindictiveness. *Id.* Similarly, if the presumption doesn't apply, the defendant must prove actual vindictiveness in order to prevail on the claim. *Id.* at ¶ 41.

¶ 22 In this case, the trial court's restitution award after the retrial exceeded the initial award by $125,646.37. The trial court offered two reasons for rejecting Sarabia-Martinez's argument that the restitution should be limited to the amount of the initial award.

¶ 23    First, the trial court reasoned that "the idea that the amount of restitution ordered is part of [Sarabia-Martinez]'s conviction and/or sentence is dubious." It is true, as the People point out, that our supreme court recently held that an order setting the amount of restitution is not part of a defendant's sentence. *See Tennyson v. People*, 2025 CO 31, ¶¶ 7, 45. But this doesn't mean the same due process principles are any less applicable to a restitution order than to a sentencing decision. Regardless of whether a decision affects sentencing or restitution, the fear of vindictiveness in that decision "may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction." *Pearce*, 395 U.S. at 725. Thus, federal and state courts consistently have applied the standards set forth in *Pearce* and its progeny to restitution orders. *See, e.g., United States v. Nottingham*, 648 F. App'x 607, 608 (9th Cir. 2016); *United States v. Feldman*, 825 F.2d 124, 132-33 (7th Cir. 1987); *People v. Powell*, 230 N.Y.S.3d 445, 450-51 (N.Y. App. Div. 2025); *Callaham v. State*, 732 S.E.2d 88, 92-93 (Ga. Ct. App. 2012); *State v. Samora*, 2004 UT 79, ¶ 24; *State v. Pflepsen*, 590 N.W.2d 759, 768-69 (Minn. 1999).

¶ 24    Second, the trial court reasoned that "[Sarabia-Martinez]'s aggregate sentence in this case following appeal is lesser than the sentence originally imposed." As the People point out, while the restitution order after the retrial increased by $125,646.37, the sentence decreased by four years. We decline to resolve whether the decreased length of the sentence can offset the increased amount of restitution, such that the presumption of vindictiveness doesn't apply, because we agree, for other reasons, that there is no indication the new restitution order resulted from vindictiveness. *See People v. Garcia-Gonzalez,* 2020 COA 166, ¶ 16 (we may affirm on any basis supported by the record).

¶ 25    First, it's not clear that the presumption of vindictiveness would apply — at least as to the determination made by the trial court — given that a different judge made the new restitution ruling on remand. *Cf. McCullough,* 475 U.S. at 140 (the presumption didn't apply to sentencing decisions made by "different sentencers"); *Rojas,* ¶ 41 (the presumption didn't apply when the defendant's "new sentences were imposed by a different judge than the judge who imposed his original sentences" and nothing in the record "otherwise suggest[ed] a reasonable likelihood of actual

13

vindictiveness"). Nonetheless, the presumption still might apply to the decision by the prosecution to seek an increased amount of restitution on remand. *Cf. Blackledge v. Perry*, 417 U.S. 21, 27-29 (1974) (considering potential vindictiveness on the part of a prosecutor by bringing new charges against the defendant after he asserted his appellate rights); *Cook*, ¶¶ 21-32 (same).

¶ 26 Yet, even if the presumption applied, we conclude that the People have effectively rebutted it. Although the trial court didn't explain the increase in restitution from the original award to the new award, the prosecution sufficiently explained the amounts it requested on remand, and the trial court approved that increase.

¶ 27 During the remand proceedings, the prosecution initially sought to increase the restitution awardable to the SBA by tacking on interest. But it ultimately dropped its request for interest and sought a slightly smaller amount of restitution than it originally had obtained for the SBA — $654,717.94, compared to $655,234.00. The court awarded that amount.

¶ 28 The prosecution also sought and obtained increased amounts of restitution for the lenders — collectively, $422,500, as opposed to the original $296,337.57. But there is no indication in the record

14

how the amounts were calculated in the initial restitution order following the first trial. And at the restitution hearing following the second trial, the prosecution's expert offered unrebutted testimony that there were three alternative methods to calculate restitution for the lenders, the method that resulted in the lowest restitution amount was calculating the difference between the initial purchase price and the resale price for each of the five subject properties, and the amounts being sought for the lenders were calculated by making those simple calculations. Thus, the restitution award on remand, while higher, was based on objective evidence and does not in any way appear to be vindictive.

¶ 29     Accordingly, we reject Sarabia-Martinez's double jeopardy and due process challenges to the restitution order.

## IV.   Disposition

¶ 30     The order is affirmed.

JUDGE MOULTRIE and JUDGE BERGER concur.